RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee*,

    *v*.

OSCAR CURTIS ROBINSON,

               *Defendant-Appellant*.

No. 17-4018

_____

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:17-cr-00124-1—John R. Adams, District Judge.

Decided and Filed:  June 7, 2018

Before:  McKEAGUE, GRIFFIN, and WHITE, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:**  Vanessa F. Malone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant.  Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

GRIFFIN, Circuit Judge.

Defendant Oscar Robinson appeals the above-Guidelines sentence imposed after he pleaded guilty to possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Robinson argues that his sentence is substantively unreasonable because the district court did not give an adequate or proper rationale.  We disagree and affirm.

I.

Robinson's conviction stems from an investigation into his drug trafficking activity.  Law enforcement officers obtained a search warrant for Robinson's Ohio apartment after observing him sell drugs outside, and after making a series of controlled buys from him.  When the officers arrived to execute the warrant, Robinson fled and was chased, tackled, and subdued.  Police officers then seized fentanyl, marijuana, and methamphetamine, as well as three scales, a blender, packaging materials, three cell phones, $60 in currency, and a bag of needles, from the apartment.  Two women and a young child were present during the search.

In Robinson's pre-sentence report (PSR), a probation officer calculated a total offense level of nineteen.  Because Robinson's criminal history spanned nineteen years and yielded a total score of twenty six, he was assigned to Criminal History Category VI.  Robinson faced a statutory maximum of twenty years in prison, but his advisory Guidelines imprisonment range was 63-78 months.

The district court sentenced Robinson to 118 months after varying upwards from the top of his Guidelines range by forty months.[1]  In doing so, the district court invoked its discretion to increase a sentence based on the 18 U.S.C. § 3553(a) sentencing factors rather than a specific Guidelines provision. *See United States v. Jordan*, 544 F.3d 656, 671 n.12 (6th Cir. 2008) (distinguishing a variance from a departure).

II.

Here, Robinson contends that the district court gave excessive weight to certain factors including his continued drug use and recidivism, and to the community-wide harm caused by the opioid epidemic in Ohio.[2]

---

[1]The parties debate the length of Robinson's sentence.  Although the district court initially sentenced Robinson to 120 months, it reduced the term of imprisonment to 118 months pursuant to USSG § 5G1.3 to account for Robinson's time spent in a county jail between his arrest and arraignment in this case.

[2]Robinson also urges us to consider as evidence of his sentence's unreasonableness the fact that the district court ordered a criminal-history-only pre-plea presentence report at Robinson's arraignment because, based on the criminal history information already disclosed in Robinson's pretrial report and at his detention hearing, it wondered whether Robinson could be a career offender.  The district court thought the parties would want to address that

A.

An above-Guidelines sentence is neither presumptively reasonable nor presumptively unreasonable. *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016). We review it for abuse of discretion, "whether . . . just outside, or significantly outside the Guidelines range[.]" *United States v. Cunningham*, 669 F.3d 723, 728 (6th Cir. 2012) (citation omitted). However, "a major departure should be supported by a more significant justification than a minor one." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Robinson challenges the substantive reasonableness of his sentence. We consider a sentence to be substantively unreasonable where the district court "arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *Cunningham*, 669 F.3d at 733 (citation omitted). Our review of Robinson's sentence "will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. But we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

B.

Robinson has struggled with substance abuse throughout his life, and challenges how the district court weighed his relapse and recidivist history. Simply stated, Robinson argues that the district court improperly punished him for being an addict. But Robinson takes a narrow view of the record. In view of "the totality of the circumstances," his sentence was substantively reasonable. *See Gall*, 552 U.S. at 51.

---

possibility in their plea negotiations. On appeal, Robinson argues that suggesting he could be a career offender "removed the presumption of innocence," but the pre-plea report was, in fact, beneficial to him in that it clarified before a plea agreement was reached that he was not a career offender. And Robinson never objected—either during his arraignment or after the district court issued its order, which stated that Robinson had consented to the pre-plea disclosure. *See* Fed. R. Crim. P. 32(e)(1). But in any event, Robinson was not sentenced as a career offender nor entitled to any presumption of innocence at sentencing. Because Robinson does not explain, nor can we discern, how he was prejudiced at sentencing by the unchallenged pre-plea disclosure of his criminal history, we will focus our analysis on the district court's reasons given at sentencing for imposing the sentence that it did.

1.

First and primarily, Robinson urges that the district court's consideration of his continued drug use and repeated community-control violations was improper given the nature of addiction and the allegedly inadequate treatment opportunities afforded him by the state of Ohio. Because the district court viewed this history as evidence of Robinson's continued failure to conform his conduct to the law, we disagree.

At sentencing, the district court detailed Robinson's nineteen-year criminal history that began when he was eighteen. In doing so, it underscored the serious nature of that history, referencing Robinson's past convictions for aggravated robbery, cocaine possession and trafficking, assault, weapons possession despite a firearm disability, driving under the influence, misusing credit cards, domestic violence, and violating a temporary protection order, among others. The district court also noted that Robinson's driver's license had been suspended forty-four times, and he had received at least twenty-two traffic citations, further contributing to an excessive burden on law enforcement. And, by the district court's count, Robinson had been placed on state community control eight times in two decades, and had violated community control each time.

Based on the information in Robinson's PSR and his own experience as a former state-court judge, the district court judge expressed skepticism at defense counsel's suggestion that Robinson had not been given any opportunity to, or had never been directed to, "engage in drug treatment when many of [his] community control sanctions were for drug-related offenses."[3] In response, defense counsel conceded that Robinson had been offered some level of substance-abuse treatment in the past, but not the kind of long-term treatment he needed. The district court agreed and granted defense counsel's request for such treatment, but reiterated its point that

---

[3]A magistrate judge drew a similar inference at Robinson's detention hearing from the information in Robinson's pretrial report, remarking that Robinson had apparently "received drug treatment, but ha[d] always relapsed." Robinson did not object. And Robinson later admitted to a probation officer that he had received some substance-abuse treatment. To the extent Robinson now argues that the record was inadequately developed on this issue, he waived any such challenge by declining the district court's offer at sentencing to pause proceedings and further explore the nature and extent of his prior substance-abuse treatment opportunities. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (defining waiver as "the intentional relinquishment or abandonment of a known right" (internal quotation marks and citation omitted)).

although Robinson was an addict, he had "had numerous, numerous chances" to modify his behavior and "failed at every, every opportunity at a community control sanction." Accordingly, the district court concluded, Robinson "ha[d] proven over many, many, many years" that he would continue to distribute opioids absent "a very long period of incarceration." For the district court, a variance was thus warranted given his failure to conform his conduct to law despite many previous opportunities and penalties.

The district court thus stressed as significant factors Robinson's criminal and recidivist history, and the need to deter him from committing more crimes, and thus protect the public. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(C). To the extent Robinson now claims that the district court ignored existing research on addiction, we note that the materials regarding addiction and relapse rates that he brings to our attention on appeal were not presented to the district court. *See United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017) (this court reviews a case as it was presented to the district court). But even if they had been, it was not unreasonable for the district court to treat Robinson's continued drug use (despite at least some treatment opportunities and repeated community-control sanctions) as a factor that could explain, but not outweigh, his extensive criminal history and chronic recidivism. *Cf. United States v. Kruger*, 613 F. App'x 451, 454 (6th Cir. 2015) (a defendant's "multiple post-release violations for continued drug use" evidence a lack of respect for the law). Robinson specifies no contrary authority.

In any event, a district court does not commit reversible error simply by "attach[ing] great weight" to a few factors. *See Gall*, 552 U.S. at 57. Indeed, "[n]ot all [§ 3553(a) factors] are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). Here, given the nature and extent of Robinson's criminal and recidivist history in light of his relatively young age (38), the district court's concerns were not undue; they are among the valid reasons the district court gave for imposing an upward variance. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(C) (factors to consider include the defendant's personal history and characteristics, promoting respect for the law, justly punishing the instant offense, affording adequate deterrence to criminal conduct, and protecting the public from future crimes of the defendant).

And Robinson's contentions aside, the district court was not indifferent to the sympathetic aspects of his personal history, including his struggle with addiction, and his request for long-term treatment. Both the PSR and Robinson's trial counsel detailed for the district court how a very young Robinson was introduced to drugs and alcohol by his parents, and subject to physical abuse by his father. Robinson himself admitted to the district court that his life "ha[d] been a real battle with drugs," but asserted that he was finally ready to conquer his substance-abuse issues. In response, the district court acknowledged Robinson's personal history and afforded him the opportunity per § 3553(a)(2)(D) to participate in an intensive 500-hour residential drug-abuse-treatment program while incarcerated.[4] Moreover, the district court recommended cognitive behavioral therapy for Robinson after he is released. Thus the district court's sentence contemplated not just punishment and community protection, but also Robinson's need for rehabilitation. *See* 18 U.S.C. § 3553(a)(2)(D).

On this record, the district court did not abuse its sentencing discretion.

2.

Second and relatedly, Robinson maintains that the district court abused its discretion by considering the harm caused by the opioid epidemic in Ohio without acknowledging that Robinson's own addiction compelled his illegal conduct. This argument also fails. Here, the district court gave the parties two reports prior to sentencing that detailed the number of overdose deaths in two Ohio counties from heroin, fentanyl, and related drugs, including the county where Robinson's offense occurred. The district court stated at sentencing that "our communities ha[d] been ripped apart by opioids and fentanyl and other related drugs," and that "[f]entanyl and heroin [were] killing people on a regular basis." But the district court did not vary upwards solely because the local community had suffered an increase in opioid use and related overdose deaths.

---

[4]The district court also credited Robinson for being candid with police officers about the presence of drugs and scales in the apartment, for quickly acknowledging that he had been selling drugs in the parking lot of his apartment complex, and for sparing his live-in girlfriend by immediately denying that she had any involvement in his illegal activities.

In its assessment of the § 3553(a) factors, the district court recognized that Robinson was an addict, but no mere user, and admonished him for the seriousness of his specific conduct in contributing to the opioid problem:  dealing "death drugs" and placing everyone at risk by "put[ting] these poisons into the hands of addicts[.]"  Given the devastating effects of those drugs and their widespread local availability, as facilitated by dealers including Robinson, the district court noted that the opioid epidemic had been extraordinarily burdensome on local law enforcement and the local health-care system.  The district court elaborated that law enforcement risked involuntary exposure to fentanyl by investigating trafficking activity, and in this case also had to chase and subdue Robinson, a risky situation for all involved because the officers did not know whether Robinson was armed.  Moreover, the district court observed that Robinson had placed a young child and two women at similar risk by keeping fentanyl in his apartment and in their immediate presence.  Of particular significance to the district court was the risk of the child ingesting fentanyl.

And because Robinson sold to people from outside the area, the district court added, his product was being distributed to, and was thus similarly harming, other Ohio communities.  The district court concluded that, because Robinson's past recidivism showed an unwillingness to stop dealing fentanyl and methamphetamine, "a long sentence [was] necessary" to deter him and others, and protect the community.  For the district court, that Robinson himself was an addict was insufficient to outweigh the seriousness of the instant offense conduct and the other aggravating factors that supported a variance.

The district court did not abuse its discretion in considering the effect of the opioid epidemic in Ohio, or the seriousness of Robinson's specific offense conduct, in reaching this conclusion.  *See United States v. Sandoval*, 501 F. App'x 491, 493 (6th Cir. 2012) (per curiam) (not an abuse of discretion to vary upward based in part on defendant's specific conduct in contributing to heroin addiction in the Cleveland area).  The district court underscored that Robinson was a distributor of several types of drugs including fentanyl and methamphetamine.  As Robinson admits, we have explained that "post-*Booker*, the district court has discretion to consider the nature of heroin" and similar drugs when deciding "that the Guidelines do not provide adequate punishment."  *See United States v. Johnson*, 457 F. App'x 512, 521 (6th Cir.

2012) (district court did not abuse its discretion in considering the dangerous effects of heroin); *see also Sandoval*, 501 F. App'x at 493 (same). And we have found no error where, as here, a district court varied upward but "specifically articulated [any] policy differences with the [Sentencing] Commission as being predicated on local, not national, conditions that have recently and rapidly changed—specifically the [opioid] epidemic in Ohio."[5] *See United States v. Ford*, 2018 WL 1037417, at *4 (6th Cir. Feb. 23, 2018).

Robinson does not dispute the district court's factual conclusions about the consequences of the opioid epidemic in Ohio, and cites no legal authority prohibiting sentencing courts from considering the potential ramifications of a defendant's illegal conduct. On the contrary, § 3553(a) *requires* sentencing courts to take into account "the nature and circumstances of the offense" and its "seriousness." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). Instead, Robinson argues that the district court's description of the effects of heroin and fentanyl was too vague. But as detailed above, the district court "fully described its reasons for believing [those opioids] to be worse than other drugs," including their deadly and addictive effects, and thus did not abuse its discretion in considering their effect on the local community. *See Johnson*, 457 F. App'x at 521.

In sum, our review of the sentencing record shows that the district court fully considered the applicable § 3553(a) factors and properly justified the variance it imposed. As discussed above, the district court appropriately weighed Robinson's personal history and characteristics including his difficult childhood, past opportunities to reform, request for long-term treatment, and the breadth and seriousness of his criminal history and chronic recidivism against the nature and circumstances of the instant offense, and the need for just punishment, adequate deterrence, and public protection. *See, e.g.*, *United States v. Tristan-Madrigal*, 601 F.3d 629, 632, 636 (6th Cir. 2010) (affirming an upward variance to deter defendant and to protect the public in view of defendant's "persistent" illegal reentries and DUI convictions). That the district court did not

---

[5]Notably, the Sentencing Commission recently adopted higher Guidelines penalties for knowingly misrepresenting or marketing fentanyl or its analogues. 83 FR 20145-02, 20148–50 (May 7, 2018); *see also* News Release, U.S. Sentencing Comm'n, U.S. Sentencing Commission Unanimously Adopts 2018 Guideline Amendments (Apr. 12, 2018), http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/press-releases/20180412_Press_Release.pdf.

weigh the § 3553(a) factors as Robinson hoped does not compel the conclusion that it imposed an unreasonable sentence. *See United States v. Houston*, 813 F.3d 282, 296 (6th Cir. 2016).

We conclude that "the record establishes no cognizable basis for second guessing the district court's exercise of sentencing discretion, and several reasons why it deserves our respect." *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009) (internal citation omitted). Based on our careful review of the record, and considering all of the facts and circumstances contained therein, we find no abuse of the district court's sentencing discretion.

## III.

For these reasons, we affirm Robinson's sentence.