RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0129p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 17-3954

MARCUS D. FLEMING,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:17-cr-00081-1—John R. Adams, District Judge.

Argued: June 13, 2018

Decided and Filed: June 29, 2018

Before: KEITH, ROGERS, and KETHLEDGE, Circuit Judges.

─────────────────

#### COUNSEL

─────────────────

**ARGUED:** Eric C. Nemecek, FRIEDMAN & NEMECEK, L.L.C., Cleveland, Ohio, for
Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for
Appellee. **ON BRIEF:** Eric C. Nemecek, FRIEDMAN & NEMECEK, L.L.C., Cleveland,
Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland,
Ohio, for Appellee.

─────────────────

#### OPINION

─────────────────

ROGERS, Circuit Judge. Marcus Fleming was convicted of a cocaine offense, and the
United States Sentencing Guidelines provided for a recommended sentence of 60 months'

imprisonment. At his sentencing hearing, the district court doubled that. It did so based in large part on a brief local news article that described a recent surge in drug overdose deaths, mostly due to powerful opioids like fentanyl. Neither this article, nor the underlying Ohio state report on which it was based, was provided to the parties before the start of the sentencing hearing. Nor was Fleming notified before the hearing that the district court planned to consider the article or the issues it addressed. Because this procedure denied Fleming a meaningful opportunity to comment on information that led to a substantial increase in his sentence, the resulting sentence was procedurally unreasonable.

During a July 2016 traffic stop in Canton, Ohio, police found 989 grams of cocaine in a knapsack on the rear floorboard of Fleming's car. Fleming subsequently pleaded guilty to one count of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Fleming's plea agreement stipulated that his base offense level would be 24, the applicable offense level for possession of at least 500 grams but less than 2 kilograms of cocaine. *See* USSG § 2D1.1(c)(8). The Government agreed to a three-level reduction for acceptance of responsibility, *see* USSG § 3E1.1(a), (b), bringing his offense level down to 21.

Initially, there was some thought that Fleming might qualify for the career-offender enhancement. *See* USSG § 4B1.1. His presentence report listed nine prior convictions, two of which might have counted as career-offender predicates. Had Fleming been classified as a career offender, his Guidelines range would have been 188 to 235 months' imprisonment (roughly 15 to 20 years). However, he was ultimately determined not to be a career offender. As it turned out, the two potential predicate convictions constituted a single sentence for Guidelines purposes, because they were not separated by an intervening arrest and Fleming was sentenced for both offenses on the same day. *See* USSG § 4A1.2(a)(2).

Without the career-offender enhancement, Fleming had a total offense level of 21 and a criminal history category of II. For an offender with these characteristics, the Guidelines prescribe a sentencing range of 41 to 51 months' imprisonment. However, because the statutory minimum for Fleming's offense is 60 months, *see* 21 U.S.C. § 841(b)(1)(B)(ii)(II), the final presentence report calculated his Guidelines term of imprisonment as 60 months (5 years). *See* USSG § 5G1.1(b). Fleming filed a sentencing memorandum in which he asked for a within-

Guidelines sentence of 60 months' imprisonment.  The Government did not file a sentencing memorandum.

Fleming's sentencing hearing took place on September 1, 2017.  At the beginning of the hearing, the district court provided the parties with copies of a local news article that had been published online on Cleveland.com two days before the sentencing hearing.  The article, which was a little over 200 words in length, purported to summarize the findings of a recent Ohio state report documenting an increase in drug overdose deaths in the state.  The bulk of the article focused on overdoses due to potent opioids.  In particular, it noted that state officials were "attributing the surge [in overdose deaths] to stronger drugs, including fentanyl and the emergence of a similar drug, carfentanil."  The article mentioned cocaine only briefly and, even then, in connection with opioids.  The article observed that cocaine overdoses were on the rise, but also that "[t]here are indications that cocaine is increasingly being used with fentanyl and other opiates," and that 80.2% of all cocaine overdose deaths in 2016 also involved an opiate.

Before the sentencing hearing, there had been no suggestion that an upward variance was under consideration.  As the hearing began, the district court informed the parties that it would consider the recently provided article in imposing Fleming's sentence, but the court did not expressly state that the article would be considered for the purpose of imposing an upward variance.  Fleming's counsel then presented argument, after which Fleming was permitted to allocute.  The Government made its own argument, during which it recommended a within-Guidelines sentence of 60 months.  Neither of the parties discussed the article, or the community harm caused by cocaine or opioids.

After considering the 18 U.S.C. § 3553(a) sentencing factors, the district court varied upward and imposed a sentence of 120 months' imprisonment.  The district court did so in large part based on its concern about the increase in overdose deaths reflected in the article.  In the court's view, the Guidelines were not "sufficient to address the kind of issues that we're now having with this type of trafficking in these large amounts of cocaine."  After quoting extensively from the article, the district court explained that, "on its face, one kilogram of cocaine in the face of the numerous deaths that we are dealing with in the state, in this country, makes it certain in my mind that long prison times are appropriate."  The district court explicitly said that its

decision to double Fleming's sentence was based on the article, explaining that the article was "[i]n large part . . . some indication of why long, lengthy sentences are necessary to try and deter" cocaine trafficking. The district court was also careful to observe that it could not—and did not—take into account Fleming's close brush with career-offender status in its decision to vary upward.

After announcing Fleming's ten-year sentence, the district court asked whether the parties had any additional arguments or objections, the question necessary to obtain the benefit of plain-error review of unraised objections under *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Fleming's counsel responded: "Defense counsel would just make a general objection to the basis for the upward variance, the issuance of the upward variance itself, and the fact that counsel didn't receive any advance notice as to the Court's intention to consider a variance upward." The district court responded that advance notice of the court's intent to vary is not required, and that the court otherwise stood by its earlier recitation of the § 3553(a) factors.

Fleming now appeals, arguing that his sentence was both procedurally and substantively unreasonable. *See generally United States v. Bolds*, 511 F.3d 568, 578–81 (6th Cir. 2007) (explaining procedural and substantive reasonableness review). In particular, he contends that his sentence was procedurally unreasonable because the district court varied upward based on extraneous information about opioid overdose fatalities in the Cleveland.com article, without providing advance notice of the court's intent to do so, such that Fleming was subjected to an unfair surprise and denied a meaningful opportunity to address that information at sentencing. This argument has merit.

A sentence is procedurally unreasonable when "the facts or issues on which the district court relied to impose a variance came as a surprise and [the defendant's] presentation to the court was prejudiced by the surprise." *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (quoting *United States v. Rossi*, 422 F. App'x 425, 432 (6th Cir. 2011)); *see also United States v. Bunkley*, No. 17-3318, 2018 WL 1960503, at *3 (6th Cir. Apr. 26, 2018). Here, the district court's reliance on information about mixed cocaine-opioid overdose deaths in the Cleveland.com article was a surprise, and that surprise was prejudicial to Fleming's sentencing

presentation. Therefore, Fleming's sentence was rendered in a procedurally unreasonable manner.

The district court's consideration of information about mixed cocaine-opioid overdose deaths was a surprise because, before the sentencing hearing, there was no indication that opioids were relevant to this case, let alone that they would play a prominent role. Fleming was convicted for possession of cocaine, not opioids. Nothing in the record suggested that opioids were found in Fleming's car, or that Fleming had ever sold or possessed opioids, or even that any cocaine Fleming sold had ever been mixed with opioids. Of course, opioids have been a topic of grave public concern in recent years, as their devastating and tragic effects have been felt across the country. But it was far from apparent that they were relevant to Fleming's sentence for possession of cocaine.

Additionally, we have noted that "the weight the court ultimately assigned to [unexpected] considerations" may contribute to the surprise. *Coppenger*, 775 F.3d at 805. Here, Fleming must have been surprised by the weight the district court gave the Cleveland.com article in the sentencing decision. The district court was quite clear that information in the article was crucial to its decision to vary upward by five years. In particular, the court emphasized that the article was "[i]n large part . . . some indication of why long, lengthy sentences are necessary to try and deter this type of activity." The district court's consideration of statistics regarding mixed cocaine-opioid overdose deaths was not just made in passing; in the court's own telling, it was central to the decision to double Fleming's sentence.

Fleming was prejudiced by this surprise because his counsel did not have a meaningful opportunity to contest the veracity or relevance of the information contained in the Cleveland.com article. The court provided the article to counsel only at the outset of the hearing. This did not allow counsel time to digest the information in the article—let alone to review the underlying state report on which the article was based, and which was never provided to the parties—so as to be able to contest meaningfully its conclusions and relevance during the hearing.

As to the accuracy of the article's conclusions, Fleming argues that the article contains false and misleading statements. He contends that the article misconstrued the findings of the underlying state report, and that the state report does not fairly permit the conclusion, drawn by the article, that every person who had cocaine detected in their system when they overdosed died *of a cocaine overdose* (as opposed to an opioid overdose that occurred while cocaine was also present). He further notes that he was unable to point out these issues to the district court, both because there was not enough time to review the article, and, more fundamentally, because the district court did not provide copies of the report itself. Additionally, Fleming argues that if he had been given an opportunity to review the article in advance, he might have been able to convince the district court that it was of limited relevance, given that it mostly dealt with an increase in overdose deaths caused by fentanyl and carfentanil (exceptionally potent opioids), and noted only secondarily that more people were dying from mixed use of cocaine plus those powerful opioids. We need not resolve these questions regarding the article's accuracy and relevance. The point here is that these questions should be directed to the district court in the first instance, but the district court's failure to provide Fleming with notice of its intent to rely on the article, as in *Coppenger*, 775 F.3d at 805, "denied him opportunity to undertake the requisite legal research and factual inquiry necessary to formulate an effective response."

Moreover, although the article was distributed to the parties at the start of the hearing, Fleming's counsel did not know for certain how the district court planned to use it until after counsel had already made his argument. Indeed, the court's entire discussion of the issues raised in the article came after Fleming's argument and allocution were complete. By waiting until after Fleming's opportunity to speak had passed, the district court made it even more likely that Fleming would never address this key information on which the five-year upward variance was based. A sentencing hearing is meant to provide an opportunity for "full adversary testing of the issues relevant to a Guidelines sentence." *United States v. Christman*, 509 F.3d 299, 304 (6th Cir. 2007) (quoting *Burns v. United States*, 501 U.S. 129, 135 (1991)). But the way this hearing was conducted ensured that meaningful adversarial testing would not occur.

Of course, a district court's consideration of the community harm caused by drug offenses will not necessarily come as a surprise. The harm that a drug causes to the public may

be a relevant and expected consideration in a sentencing hearing for a conviction related to that drug.  *See, e.g.*, *United States v. Johnson*, 457 F. App'x 512, 521 (6th Cir. 2012).  Indeed, 18 U.S.C. § 3553(a)(1) directs district courts to consider the "nature and circumstances of the offense," and it is inherent in the nature of selling some drugs that the product will sometimes result in death to purchasers.  For instance, in *United States v. Robinson*, 892 F.3d 209, 215–16 (6th Cir. 2018), we concluded that the district court did not abuse its discretion in considering the community harm caused by the opioid crisis when the defendant was convicted for possessing fentanyl.[1]  But the article the district court relied on here did more than simply discuss the omnipresent risk that cocaine sales may lead to cocaine overdoses.  It went much further, observing that there is a national opioid crisis and that "cocaine is increasingly being used with fentanyl and other opiates," such that cocaine overdoses are up, and in particular that 80% of those overdoses also involved use of an opioid.  Statistics discussing an increase in deaths due in large part to opioids, which Fleming did not sell or possess, were bound to come as a surprise.  Thus, even though this was a drug case, the subject of *opioid deaths* in particular was not, in the words of *Coppenger*, 775 F.3d at 805 (quoting *United States v. Irizzary*, 553 U.S. 708, 716 (2008)), a "garden variety consideration" that competent counsel should have anticipated.

It is true that, while a district court must give notice before it can impose a *departure*, *see* Fed. R. Crim. P. 32(h), the same is not true for a *variance* under *Irizzary*, 553 U.S. at 708.  But *Irizzary* answers a different question from the one before us.  *Irizzary* holds only that a district court need not notify the parties that a variance is possible before it may impose a variance at sentencing.  *See id.* at 712–16.  That does not answer the different question posed here: whether a district court must provide notice of *the specific issues* it plans to consider in imposing a variance if those issues will come as a surprise to the parties.  Thus, we have observed that *Irizzary* "left open the possibility of relief" where, as here, the district court's consideration of certain information came as a surprise, and that surprise prejudiced the

---

[1]In a citation of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j), the Government argues that *Robinson* compels a different result here.  But *Robinson* is clearly distinguishable, because there the defendant challenged only the substantive reasonableness of his sentence, not its procedural reasonableness, and the *Robinson* defendant pleaded guilty to possession of fentanyl with intent to distribute, making opioid overdoses a foreseeable issue there (unlike in this cocaine case).  The Government's citation of *United States v. Ford*, 724 F. App'x 428 (6th Cir. 2018), is also unavailing because, like *Robinson*, that case involved convictions for possessing fentanyl.

defendant by preventing him from effectively addressing the information at sentencing. *Coppenger*, 775 F.3d at 804 (quoting *Rossi*, 422 F. App'x at 432). *Irizzary* does not defeat Fleming's claim here.

The Government contends that Fleming should have asked for a continuance once he realized the district court intended to rely on information he was not prepared to address. As a general matter, it is good practice for defense counsel to request a continuance once it becomes evident that the district court plans to consider unexpected information, and district courts should "consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial." *Irizzary*, 553 U.S. at 716; *see also Rossi*, 422 F. App'x at 433. But several factors counsel against a finding of forfeiture or waiver in this case. Before the sentencing hearing, there was no indication that the Cleveland.com article, the underlying state report, or the opioid crisis would be considered. As the hearing began, the district court informed the parties only that it had "provided counsel for both sides with a . . . summary of a recently issued report referencing and discussing drug overdose deaths in Ohio which I'll be considering as part of the Court's sentence with regard to the matter." There was no hint that the report in question would deal largely with opioid overdose deaths, or that the district court planned to use that information to justify a five-year upward variance. The article was not mentioned again until after the parties' arguments and Fleming's allocution had concluded, by which point the train had left the station and the court was already rendering its sentence.

The Government further argues that we should review Fleming's procedural-unreasonableness claim only for plain error. Fleming disputes this contention, arguing instead that the abuse-of-discretion standard applies. In response to the district court's *Bostic* question, Fleming's counsel stated three objections: (1) "a general objection to the basis for the upward variance"; (2) an objection to "the issuance of the upward variance itself"; and (3) an objection to "the fact that counsel didn't receive any advance notice as to the Court's intention to consider a variance upward." These objections were arguably sufficient to preserve Fleming's procedural-unreasonableness claim for appellate review. Ultimately, however, we need not resolve this dispute, because Fleming prevails under either standard of review.

This is because his claim succeeds even under the more restrictive plain-error review, and thus necessarily meets the abuse-of-discretion standard. To demonstrate plain error, Fleming must show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *See United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)); *see* Fed. R. Crim. P. 52(b). Fleming meets each of these elements. First, for the reasons stated above, there was error. Second, the error was obvious because the district court should have realized that the Cleveland.com article contained information that the parties might reasonably not have anticipated would be relevant. The district court should also have been aware that the structure of the sentencing hearing—in which the parties were given the article only at the start of the hearing, the underlying state report was not provided at all, and the district court did not explain why the article was relevant until after the parties' arguments—would prevent Fleming from commenting on that information in a meaningful way. Third, Fleming's substantial rights were affected. "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence." *Wilson*, 614 F.3d at 223. Such a reasonable probability exists here because, had Fleming been given advance notice of the district court's intent to rely on the article, he might well have been able to persuade the district court that the information in the article was unreliable or of limited relevance to his offense. Finally, the error "affected the fairness, integrity, or public reputation of the judicial proceedings." We have discretion whether to deem this factor met, *id.* at 225, and we do so here because otherwise Fleming may serve an additional five years in prison based on potentially unreliable and extraneous information that was interjected into the proceedings in a way that ensured no meaningful adversarial testing. Our conclusion in this respect is similar to that in *Coppenger*, 775 F.3d at 806, in which we found plain error where the district court imposed an upward variance based on information in co-conspirators' presentence reports to which the defendant did not have access.

Fleming also contends that his sentence was substantively unreasonable. However, "an appellate court is required to assess the substantive reasonableness of a sentence only if the sentence is procedurally sound." *Wilson*, 614 F.3d at 226 (citing *Gall v. United States*, 552 U.S.

38, 51 (2007)).  Because Fleming's sentence was procedurally unreasonable, there is no need to reach this additional argument.

Finally, Fleming asks that his case be reassigned to a different judge on remand, but the record here does not justify that.  We consider three factors to determine whether reassignment is warranted:

(1)  whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings;
(2)  whether reassignment is advisable to preserve the appearance of justice; and
(3)  whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006).  Fleming contends that reassignment is necessary because some of the district judge's comments regarding Fleming's good fortune in avoiding career-offender status showed a predisposition toward a harsher sentence.  But at the sentencing hearing the district judge properly observed on several occasions that he could not—and would not—consider Fleming's close call in escaping the career-offender enhancement.  We have no reason to think that the district judge will do any differently on remand.  Fleming also points to comments that the district judge made at the change-of-plea hearing, in which the district judge stated that there was a "strong likelihood" that Fleming would qualify as a career offender.  At that time, however, the district judge's statement appeared to be correct; it was only later that the probation office determined that Fleming did not qualify.  Finally, at oral argument Fleming's counsel suggested that the way the sentencing hearing was structured could call into question the district judge's willingness to consider Fleming's arguments for a lower sentence.  While the structure of the sentencing hearing was problematic for reasons previously discussed, this is not enough to justify our employing the power of reassignment, which is "extraordinary" and rarely to be invoked.  *Id.* (quoting *Sagan v. United States*, 342 F.3d 493, 501 (6th Cir. 2003)).

For these reasons, we vacate Fleming's sentence and remand for resentencing consistent with this opinion.