**PUBLISHED**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 20-4120

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ALAN WILLIAMS,

Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, Chief District Judge. (3:19-cr-00039-GMG-RWT-1)

Argued: May 7, 2021                                    Decided: July 20, 2021

Before AGEE, HARRIS, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge Agee and Judge Harris joined.

**ARGUED:** Nicholas Joseph Compton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. Kimberley DeAnne Crockett, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

RUSHING, Circuit Judge:

Over the course of at least two years, Alan Williams gained the trust of a family with three children. He grew so close with the family that the parents let him take their teenage daughter, E.W., on out-of-state vacations. But unbeknownst to E.W.'s parents, Williams used those trips to sexually abuse the girl and, from their encounters, produced child pornography which he then distributed worldwide. Law enforcement eventually caught on to Williams, and he pleaded guilty to producing child pornography in violation of 18 U.S.C. § 2251(b). The district court sentenced Williams to 327 months' imprisonment—65 months above the range recommended by the United States Sentencing Guidelines. It also imposed a within-Guidelines lifetime term of supervised release and numerous supervised release conditions. Williams timely appeals to challenge his sentence as procedurally and substantively unreasonable. We affirm.

I.

By all accounts, Williams seemed like an upstanding citizen. He drove a school bus, worked as a volunteer firefighter and EMT, and was a long-time friend and roommate of a Jefferson County Deputy Sheriff. Williams met E.W.'s family when the fire department hosted a special event for their youngest daughter, who is severely autistic. Over time, the family invited Williams into their home to "assist[] the family so that they could see to the special needs of the youngest child." J.A. 130. Williams assumed a "caregiver" relationship with the family's older children, E.W. and her brother, even taking them on vacations. J.A. 130. The parents so trusted Williams that they allowed him to take E.W. alone on a trip for her sixteenth birthday with, as a sign of his custody and

2

control, a notarized statement "granting him permission to seek medical attention on her behalf." J.A. 55, 178.

Reality, however, proved much more sinister. While cultivating a relationship with the family, Williams was sexually abusing E.W. When E.W. was 14 years old (and Williams was 52), he traveled with her to Ocean City, Maryland, where he secretly took photographs of her using a hidden "pinhole" camera while she was fully nude in a hotel bathroom. He then shared those images online, advertising them as explicit photographs of his "15 yo niece" and his "own work." J.A. 177. Two years later, on a trip to Maryland for E.W.'s sixteenth birthday, Williams again used "various pinhole cameras and other covert devices to record E.W. in various stages of undress without her knowledge." J.A. 178. He also photographed himself engaging in sexual intercourse and other sexually explicit conduct with E.W.

Though Williams had successfully deceived E.W.'s family, law enforcement was catching on. Using a file-sharing website, Williams had shared numerous folders containing child pornography with an Australian police officer who accessed those folders using a password provided by Williams and confirmed their contents. Williams recounted to the undercover officer his sexual activity with E.W., whom Williams referred to as his "niece." J.A. 177. When Williams informed the officer that he would soon be spending time with E.W. again, the officer notified the Department of Homeland Security Investigations.

A federal search warrant immediately issued for Williams's residence. While the officers were searching, Williams returned to the residence with E.W. in his custody, along

3

with an overnight bag containing sex toys and bikinis. Williams admitted to possessing child pornography and sexually abusing E.W. He recounted how he "practice[d]" using his pinhole cameras by covertly photographing children on the school bus he drove for Loudoun County Public Schools, including the photograph of an 11-year-old girl in his shared folder labeled as his "own work." J.A. 31–32, 177. During the search, officers seized over 100,000 images of child pornography from Williams's devices, including images of prepubescent minors, bondage, abuse of toddlers, and bestiality.

A federal grand jury indicted Williams on six counts relating to his possession, production, and distribution of child pornography.[1] He pleaded guilty to one count of production of child pornography in violation of 18 U.S.C. § 2251(b). As part of the plea agreement, Williams stipulated that in February 2019, he

> was given temporary supervision and control over E.W. [with whom] . . . he traveled . . . from . . . West Virginia to Maryland with the intent to produce child pornography. Specifically, he traveled with pinhole camera(s) and other recording devices to covertly record E.W. while nude and while engaged in sexually explicit conduct . . . . Several pinhole cameras were recovered from Williams's bedroom during the execution of a search warrant on his residence, including one tiny camera embedded in a toiletry bag that was controlled by remote control [and] would have gone unnoticed by E.W. Using . . . the . . . cameras, Williams captured fully nude photographs of E.W. [as well as] . . . photograph[s of] E.W. engaged in sexually explicit conduct . . . .

J.A. 54–55. "All the aforementioned conduct was committed by [Williams] . . . while he was tasked by her parents with caring for . . . E.W." J.A. 55. Williams also agreed to pay

---

[1] Before the federal indictment, state authorities arrested Williams and released him on a bond that restricted his access to computers. While under bond conditions, Williams used a computer to access child pornography. The state charges were dismissed after the federal indictment issued.

$20,000 in restitution to E.W., which would be placed in trust for her future treatment and care.

In the presentence investigation report (PSR), the probation office calculated a total offense level of 37 and criminal-history category of I, yielding a Guidelines range of 210 to 262 months' imprisonment and 5 years to life supervised release. The PSR listed and explained 22 recommended conditions of supervised release, such as barring Williams from possessing any cameras without prior approval and requiring Williams to allow the probation officer to install monitoring software on any computer he uses. The PSR also identified two factors that might warrant an upward departure from the Guidelines sentencing range: dismissed and uncharged conduct under Section 5K2.21 and extreme psychological injury under Section 5K2.3, as evidenced by E.W. cutting herself, becoming suicidal, requiring hospitalization for mental health concerns, and being placed in foster care.

At sentencing, the district court accepted the PSR without objection. Williams's attorney requested the mandatory minimum sentence of 180 months' imprisonment (a below-Guidelines sentence) and 5 years' supervised release. He specifically contested the proposed grounds for departure in the PSR and emphasized Williams's acceptance of responsibility, lack of criminal history, and "life of service to the community." J.A. 119–123. The Government requested a sentence of 262 months' imprisonment—the top of the Guidelines range. It emphasized, among other things, Williams's abuse of trust and E.W.'s resulting mental health problems, for which Williams bore at least "part of the blame."

5

J.A. 128–138; *see* J.A. 135–136 (conceding that "perhaps [] Williams isn't to blame for all" of E.W.'s mental health issues).

After hearing from the parties, the district court announced a "variant sentence" of 327 months' imprisonment and supervised release for life. J.A. 140–141. The court also imposed the twenty-two special conditions of supervised release from the PSR, grouping the conditions into roughly six categories according to their supporting rationales. For example, the requirements that Williams participate in a sex-offense specific assessment and treatment program, the court explained, "assist probation in identifying treatment needs, providing rehab services, reducing the risk of recidivism, and provide for protection of the community." J.A. 142. The conditions that Williams "must not use or possess alcohol[,] . . . must take all medications that are prescribed by [his] treating physician[,] [and] must not work in any type of employment without the prior approval of [his] probation officer[,]" the court reasoned, will "assist probation in reducing the risk of recidivism and provide for protection of the community." J.A. 142. Similarly, the various requirements limiting Williams's computer access and contact with children, the court explained, "assist probation in reducing the risk of recidivism, providing for protection of the community, and reducing the risk of harm to third persons." J.A. 144; *see also* J.A. 142–146 (announcing the other conditions and their supporting rationales).

The district court then explained that it considered all the 18 U.S.C. § 3553(a) factors in reaching its decision. The court emphasized the "egregious nature of this offense," which "involved the sexual exploitation and abuse of a child for at least a two-year period," during which Williams "secretly recorded" and distributed "across the world"

6

nude images of E.W., as well as images of him sexually abusing her, and "boasted online about his sexual activities with her." J.A. 147–148. The abuse, the court noted, ended only when law enforcement intervened. The court considered the harm to E.W., who "has since been suffering from psychological difficulties" and "will continue to be re-victimized each time her images of abuse are distributed and/or viewed." J.A. 147; *cf.* J.A. 140 (declining to resolve the parties' dispute over when E.W.'s self-harm and mental health struggles began). The court found particularly disturbing Williams's abuse of the trust placed in him by E.W.'s family and the community, noting his "habit of placing himself in positions of trust and gaining access to children" as a school bus driver and volunteer firefighter. J.A. 149; *see also* J.A. 147 (noting that E.W.'s parents "entrusted" Williams to "care for and supervise her" and he "did the complete opposite"), 149 (discussing his photographs of schoolchildren on the bus). The court also took into account the number and nature of the over 100,000 images of child pornography Williams possessed.

In summary, the court explained, "the egregious nature of the offense, the psychological impact on the victim, E.W., the number of and content within the images [Williams] possessed, and the need to punish the defendant and protect society from this menace to society, especially the most vulnerable victims of this society like E.W.," warranted the sentence imposed. J.A. 149. The court found that "[o]verall," the sentence served the purposes of punishment, general deterrence, incapacitation, and rehabilitation. J.A. 150. And lifetime supervision "will also allow the probation office to monitor [Williams's] conduct in the community to ensure his compliance with sex offender registration requirements and protect the community following his release from

incarceration." J.A. 150. With that, the court dismissed the remaining counts of the indictment and advised Williams of his right to appeal. J.A. 150. Williams's attorney then requested the court "note for appellate purposes the defendant's objection to the Court's sentence." J.A. 157.

## II.

We now have jurisdiction over this appeal. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742. Williams challenges the procedural and substantive reasonableness of his sentence, which we review under a deferential abuse-of-discretion standard. *United States v. Arbaugh*, 951 F.3d 167, 172 (4th Cir. 2020).

## A.

When reviewing a defendant's sentence, we must "first ensure that the district court committed no significant procedural error, such as 'improperly calculating the Guidelines range, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Spencer*, 848 F.3d 324, 327 (4th Cir. 2017) (alterations omitted) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Williams alleges the district court committed three procedural errors.

## 1.

First, Williams claims the district court failed to provide the required notice before departing from the Guidelines range. "'Departure' is a term of art under the Guidelines" and refers only to non-Guidelines sentences—*i.e.*, sentences outside the properly calculated Guidelines range—imposed for reasons recognized within the Guidelines' framework. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). A variance, on the other

8

hand, denotes a non-Guidelines sentence that is justified not by considerations in the Guidelines but by the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Rivera-Santana*, 668 F.3d 95, 100 n.6 (4th Cir. 2012).

The rule that a court must give notice before departing from the Guidelines range on a ground not identified in the PSR or a party's prehearing submission is a vestige of the formerly mandatory Guidelines and "does not apply to 18 U.S.C. § 3553 variances by its terms." *Irizarry*, 553 U.S. at 714; *see also* Fed. R. Crim. P. 32(h). Sentencing is a "fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds." *Irizarry*, 553 U.S. at 715 (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 4 (1st Cir. 2008) (en banc)). "Adding a special notice requirement whenever a judge is contemplating a variance [thus] may create unnecessary delay"; in "most cases," a statement announcing that possibility would not change the parties' sentencing presentations in any material way. *Id.*

The success of Williams's first argument accordingly depends on whether the district court departed or varied upwards from the Guidelines range. As Williams acknowledges, the district court described its sentence as a variance and identified it as such in its written statement of reasons. The district court's justifications for Williams's sentence confirm its description. The court couched its sentencing explanation in the Section 3553(a) factors and referred to them frequently. It found especially heinous the fact that Williams used his position of trust in the community to commit his crimes and demonstrated a "habit of placing himself in positions of trust and gaining access to children." J.A. 147–149.

9

Although the PSR identified possible bases for departure under Sections 5K2.3 (extreme psychological injury to the victim) and 5K2.21 (dismissed and uncharged conduct), the district court did not invoke those justifications for the above-Guidelines sentence.[2] The district court believed its variant sentence appropriate in part because "the effects of the abuse and trauma" would "live forever" with E.W., "who has since been suffering from psychological difficulties." J.A. 147. But the court did not make a finding of extreme psychological injury based on E.W.'s self-harm. Instead, it reasoned that E.W. "will continue to be re-victimized each time her images of abuse are distributed and/or viewed," J.A. 147—a "garden variety consideration" in a child-pornography prosecution, *Irizarry*, 553 U.S. at 716 (quoting *Vega-Santiago*, 519 F.3d at 5); *see also Paroline v. United States*, 572 U.S. 434, 457 (2014) (explaining that "every viewing of child pornography is a repetition of the victim's abuse," and "[h]arms of this sort are a major reason why child pornography is outlawed"). Similarly, though the court found that conduct underlying the dismissed charges—possession of "over 100,000 images of child pornography"—supported the upward variance, it did not mention Section 5K2.21. J.A. 148. To the contrary, the court noted that Williams had *not* received any Guidelines enhancement for those images but that the court had considered his "ongoing victimization

---

[2] We note that both grounds for departure Williams claims the district court applied were disclosed in the PSR, so the court would not have violated Rule 32(h) even had it relied upon them. *See* Fed. R. Crim. P. 32(h) (requiring notice to the parties if the court contemplates departing "on a ground not identified for departure either in the presentence report or in a party's prehearing submission"). But Williams's argument fails more fundamentally at the threshold: because the court imposed a variance, Rule 32(h) did not apply.

10

of [those] other child victims" in assessing "[t]he egregious nature of this offense." J.A. 147–148; *see also* 18 U.S.C. § 3553(a)(2)(A).

Because the district court imposed an upward variance, not a Guidelines departure, no notice was required. We reject Williams's first assertion of procedural error.[3]

2.

Williams next argues that the district court erred by basing the variant sentence in part on E.W.'s mental health when Williams did not have access to her medical records. Williams relies on *United States v. Fleming*, 894 F.3d 764 (6th Cir. 2018), to argue that a sentence is procedurally unreasonable when "the facts or issues on which the district court relied to impose a variance came as a surprise and the defendant's presentation to the court was prejudiced by the surprise." *Fleming*, 894 F.3d at 768 (internal quotation marks omitted). In *Fleming*, the Sixth Circuit vacated and remanded for resentencing after finding the district court based its sentencing decision in a cocaine-possession case "in large part on a brief local news article" about opioid overdose deaths that the district court failed to disclose to the parties before sentencing. *Id.* at 766. Williams argues that the district court's reliance on E.W.'s self-harm and mental health problems similarly prejudiced him because he lacked access to her medical records.

We reject Williams's contention for two reasons. First, before the sentencing hearing, Williams knew of—and even conceded—E.W.'s self-harm and fragile mental

---

[3] The parties dispute whether we should review the district court's compliance with Rule 32(h) for plain error or abuse of discretion. Because we find the district court committed no error, we need not decide whether Williams preserved this challenge below.

11

state.  The PSR explicitly mentioned E.W.'s self-harm and other psychological issues as possible bases for a departure under Section 5K2.3.  Despite that notice, Williams did not request medical records or other relevant evidence.  In his sentencing memorandum, he instead questioned the cause of E.W.'s self-harm and mental health issues, asserting his personal understanding that she had been "cutting herself for quite some time."  J.A. 214.  Williams therefore cannot claim surprise or denial of a meaningful opportunity to address these facts.

Second, the district court did not give great weight to the supposedly surprise evidence in imposing the sentence.  The court's only mention of E.W.'s self-harm came in response to Williams's own argument, explaining that if he were correct she had been harming herself before he abused her, "it's worse" because "he took advantage" of a child who "was very fragile psychologically."  J.A. 140.  In explaining the bases for its sentence, the court reasoned that Williams's criminal conduct in abusing E.W. and distributing her images worldwide will continue to cause her psychological harm in view of the widely accepted understanding that child-pornography victims are revictimized each time their images are viewed or distributed.  *See Paroline*, 572 U.S. at 457.  This was an appropriate sentencing consideration.

3.

Last, Williams argues the district court failed to make an individualized assessment and adequately explain his sentence, particularly the lifetime term of supervised release

12

and special conditions of supervision.[4]  Before imposing a sentence, a district court must consider the parties' arguments and "conduct an 'individualized assessment' of the facts and arguments presented."  *United States v. Blue*, 877 F.3d 513, 517–518 (4th Cir. 2017) (quoting *Gall*, 552 U.S. at 50).  The court then must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Id.* at 518 (quoting *Gall*, 552 U.S. at 50).  This duty to explain applies equally to special conditions of supervised release.  *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020).  A district court that fails to provide an explanation for the sentence imposed commits reversible procedural error.[5]  *Arbaugh*, 951 F.3d at 179.

After hearing and considering the parties' arguments, the district court here "announc[ed] at the outset" the term of imprisonment, length of supervised release, and

---

[4] Williams's briefing regarding the adequacy of the district court's explanation focuses almost entirely on his supervised release.  He challenges the procedural reasonableness of his term of imprisonment only on the two grounds previously discussed.  To the extent we must evaluate the overall procedural reasonableness of his sentence of imprisonment, we find no abuse of discretion for the reasons explained herein.  *See United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019).

[5] This Court has found a district court's failure to satisfactorily explain the conditions of supervised release to be reversible error under both abuse-of-discretion and plain-error standards of review.  *See McMiller*, 954 F.3d at 677 (applying plain-error review); *Arbaugh*, 951 F.3d at 178–179 (applying abuse-of-discretion review).  *But see McMiller*, 954 F.3d at 677 (describing *Arbaugh* as applying plain-error review).  At sentencing, Williams did not object to, or make any argument about, the conditions of supervised release aside from a generalized "objection to the Court's sentence" at the conclusion of the hearing. J.A. 157.  However, because we conclude that the district court did not abuse its discretion in explaining the conditions of supervised release it imposed, we need not consider whether the more stringent plain-error standard applies.  *See, e.g., United States v. Ziegler*, --- F.3d ---, 2021 WL 2409845, at *7 (4th Cir. 2021) ("[W]e need not determine whether we may exercise our discretion to forgo plain-error review because the standard of review does not change the outcome.").

special conditions of release it found appropriate "and then address[ed] holistically how the [Section] 3553(a) factors applied to [the] case." *Id.* at 177; *see also* J.A. 147 (stating, after announcing all aspects of the sentence, "the reasons for the sentence imposed here today are as follows"). In addition to the seriousness of the offense, the court highlighted the manner in which it was conducted—by use of secret cameras to capture images of exploitation and sexual abuse that Williams then distributed "across the world" via the internet. J.A. 147. The court emphasized that the abuse did not stop until law enforcement intervened and, even when he was released on bond, Williams continued accessing child pornography. The court considered the effects of Williams's criminal acts, not only on E.W. but also on the children pictured in the over 100,000 images of child pornography Williams possessed, from which the National Center for Missing and Exploited Children had identified 175 known series. The court further explained that it factored into its decision Williams's efforts to place himself in positions of trust around children and his deception in abusing that trust. Each of these considerations, with the exception of the seriousness of the offense and associated need for punishment, corresponds to Section 3553(a) factors the court must consider in deciding not only the term of imprisonment but also the length and conditions of a term of supervised release. *See* 18 U.S.C. § 3583(c) (requiring courts to consider the factors in Section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)); *see also id.* § 3583(d) (requiring that additional conditions of supervised release be reasonably related to the factors in Section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)). The district court's rationale for Williams's sentence reflects these overlapping duties.

14

We find the district court's explanation entirely adequate to support the lifetime term of supervised release, especially in context of the parties' arguments. By statute, Williams's offense required a minimum of 5 years' supervised release, with a maximum term of life. 18 U.S.C. § 3583(k). The Sentencing Guidelines set the same range, with the associated policy statement recommending that sex offenders receive the statutory maximum term of supervised release. *See* U.S.S.G. § 5D1.2(b)(2) (Policy Statement). In both his sentencing memorandum and at the sentencing hearing, Williams's attorney focused almost exclusively on Williams's request for a downward variance to 180 months' imprisonment and "did not make any separate [] arguments related to supervised release" or why the 5-year term he requested was appropriate. *Arbaugh*, 951 F.3d at 177. That the district court did not "separately and directly address why it was imposing lifetime supervised release" instead of a shorter term does not amount to procedural error, especially given the parties' focus on the appropriate term of imprisonment. *Id.* The district court "appl[ied] the relevant [Section] 3553(a) factors to the specific circumstances of the case before it" and stated "the particular reasons supporting" the sentence it had just announced, which included both the term of imprisonment and lifetime supervised release. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009). "No more was required, particularly where the term [of supervision] was consistent with the Guidelines recommendation." *Arbaugh*, 951 F.3d at 178.

Turning to the special conditions of supervision, Williams does not draw our attention to any particular condition he contests but instead asserts the insufficiency of the district court's explanation in general. We again find the court's explanation adequate.

15

This is not a case where the district court "made no attempt to link its explanation for [the] term of confinement with the term or conditions of supervised release." *McMiller*, 954 F.3d at 676. To the contrary: the court's assessment of the Section 3553(a) factors as applied to the specific circumstances of this case directly followed the court's announcement of the entire sentence—imprisonment, supervised release, and special conditions—and the court did not limit its explanation to any singular aspect of the sentence. *See* J.A. 147 ("Specifically, the reasons for *the sentence imposed here today* are as follows: . . . ." (emphasis added)). The structure and content of the district court's sentencing explanation indicate that its analysis of the Section 3553(a) factors applied to the sentence as a whole, including the special conditions. *See*, *e.g.*, *United States v. Aplicano-Oyuela*, 792 F.3d 416, 425 (4th Cir. 2015) ("A court's sentencing rationale . . . can support both imprisonment and supervised release.").

Before the district court, Williams did not object to any of the special conditions— which were proposed in the PSR—or make any argument particular to the conditions of supervision as distinct from the sentence of imprisonment or length of supervised release. In this context, the court likewise did not separately address the justifications for particular conditions of supervision. The court did, however, articulate the general purposes served by each group of special conditions it announced. For example, after ordering Williams to allow the probation office to install monitoring software on any computer he uses and to submit his electronics to search, the court explained that "[t]hese conditions assist probation in monitoring your compliance with the conditions of supervision, provide for protection of the community, and reduce your risk of recidivism." J.A. 145. The court's

16

explanation for other groups of conditions referenced many of the same sentencing purposes articulated in Section 3553(a). *See, e.g.*, J.A. 142–146 (noting that certain conditions "assist probation in identifying treatment needs, providing rehab services, reducing the risk of recidivism, and provide for protection of the community"; that other conditions "assist probation in reducing the risk of recidivism, providing for protection of the community, and reducing the risk of harm to third persons"; and that another condition "assists probation in legitimizing your employment and/or income, provides for protection of the community, and aids in the maximum collection of financial penalties").

Williams labels the district court's explanations as generic recitations of the statutory sentencing goals. To some extent, he is correct. The same general justifications could support applying many of these conditions in a different child-pornography case. That does not detract from their explanatory function in any particular case—similar conditions will be warranted in similar cases for similar reasons. Yet if this were the district court's only explanation for imposing the special conditions on Williams, he would have a stronger case that the court committed procedural error under our precedent. *See Arbaugh*, 951 F.3d at 179 ("[T]he district court cannot fulfill its duty by generally referring to the legal standards in [Section] 3553(a) and [Section] 3583(d) . . . .").

But this was not its only explanation. The district court immediately followed its announcement of the special conditions and their general rationales with a thorough, individualized explanation for the sentence as a whole in light of the unique facts and circumstances of Williams's case. In context of the parties' arguments below, the district court's approach fell within the broad discretion it possesses to fulfill the sentencing-

17

explanation requirement. *See Rita v. United States*, 551 U.S. 338, 356, 359 (2007); *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964–1965 (2018). We therefore find no reversible procedural error in the district court's pronouncement of the special conditions for Williams's supervised release.

B.

"If the sentence is procedurally sound, we then consider its substantive reasonableness under a 'deferential abuse-of-discretion standard.'" *Spencer*, 848 F.3d at 327 (quoting *Gall*, 552 U.S. at 52). "A sentence that does not serve the announced purposes of [Section] 3553(a)(2) is unreasonable[, as is] a sentence that is greater than necessary to serve those purposes." *United States v. Shortt*, 485 F.3d 243, 248 (4th Cir. 2007). When the district court imposes a sentence outside the advisory Guidelines range, we "must give due deference to the district court's decision that the [Section] 3553(a) factors, on a whole, justify the extent of the variance," recognizing that the district court "'has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court.'" *Gall*, 552 U.S. at 51–52 (quoting *Rita*, 551 U.S. at 357–358).

In his briefs on appeal, Williams asserts that his sentence of 327 months' imprisonment—more than 5 years above the Guidelines range—is substantively unreasonable, but he offers no supportive argument. He similarly makes no effort to rebut the presumption of reasonableness accompanying his within-Guidelines term of supervised

18

release.[6] *See United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014) (explaining that the presumption of reasonableness "can only be rebutted by showing that the sentence is unreasonable when measured against the [Section] 3553(a) factors"). We accordingly see no reason to conclude that the district court abused its discretion.

III.

When imposing Williams's sentence for producing child pornography, the district court considered the parties' arguments and responded to them before providing an individualized explanation for why it found the facts of this case particularly egregious and Williams deserving of the variant sentence it imposed. The court's individualized assessment was adequate to explain the term and conditions of Williams's supervised release, especially given Williams's lack of argument as to either. For the foregoing reasons, we affirm the judgment of the district court.[7]

*AFFIRMED*

---

[6] Williams does not challenge the substantive reasonableness of any of the special conditions of his supervised release. *See Arbaugh*, 951 F.3d at 178–179 ("The substantive reasonableness of the conditions is a separate inquiry from the procedural reasonableness of the hearing.").

[7] We deny Williams's pending pro se motions. Before oral argument, Williams sought to file pro se supplemental briefs. But Williams is represented by counsel who has filed briefs on the merits, and this appeal is not submitted pursuant to *Anders v. California*, 386 U.S. 738 (1967). He is therefore not entitled to file a pro se brief, and we deny those motions. *See United States v. Penniegraft*, 641 F.3d 566, 569 n.1 (4th Cir. 2011). After oral argument, Williams lodged a motion requesting substitute counsel, which we deny as untimely and without merit.