**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4178

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

GEORGE DARRIN FOWLER,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Timothy M. Cain, District Judge.  (6:16−cr−00603−TMC−1)

Argued:  December 9, 2022                    Decided:  January 18, 2023

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:**  William Wharton Watkins, Sr., WILLIAM R. WATKINS, PA, Columbia, South Carolina, for Appellant.  Andrew R. de Holl, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**  Miller W. Shealy, Jr., MILLER SHEALY LAW FIRM, Charleston, South Carolina, for Appellant.  Corey F. Ellis, United States Attorney, Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

WILKINSON, Circuit Judge:

George Darrin Fowler pled guilty to two federal weapons charges after local law enforcement executed a search warrant at his residence and discovered a multitude of firearms, ammunition, and drugs. The district court sentenced Fowler to 117 months' imprisonment, at the lowest end of his advisory Sentencing Guidelines range. Fowler's appellate counsel initially filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). We ordered supplemental briefing and oral argument on two issues– (1) whether the district court plainly erred in assigning one criminal history point to Fowler's criminal domestic violence offense; and (2) whether the district court adequately explained its rejection of Fowler's nonfrivolous arguments for a downward departure or variance. For the reasons that follow, we affirm the judgment of the district court.

I.

A.

After a confidential informant purchased methamphetamine from Fowler during a controlled-buy operation, the Greenville County Sheriff's Office executed a search warrant at Fowler's residence on July 27, 2016. In total, officers recovered 21 firearms, a muzzleloader, one gram of methamphetamine, 20 grams of marijuana, and over 600 rounds of assorted ammunition. Fowler was interviewed that same day and confessed that the guns and drugs were his, that he had been selling methamphetamine for a year, and that he had obtained some of the firearms as payment for drugs.

A federal grand jury then charged Fowler with (1) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)

2

(Count 1); (2) possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Count 2); and (3) possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). Fowler pled guilty without a plea agreement to Counts 2 and 3. The government voluntarily dismissed Count 1.

Following his plea, a probation officer assembled Fowler's presentence report (PSR), determining that Fowler had two prior adjudications that earned criminal history points. First was Fowler's 2003 conviction for South Carolina second-degree burglary and petty larceny, which earned three points pursuant to U.S.S.G. § 4A1.1(a). Second was a 2013 South Carolina criminal domestic violence (CDV) offense, for which a state court directed Fowler to participate in an "Addcare 26 Week Program," a domestic violence intervention program. Little else about the offense was listed in the PSR. It stated instead that "[a]ttorney representation and facts of the offense are unknown due to a ticket being issued." Joint App'x (J.A.) Vol. II at 11. The probation officer assigned Fowler one point for this offense, however, pursuant to U.S.S.G. § 4A1.1(c).

These previous adjudications resulted in a Criminal History Category III, with the point assigned to the CDV offense moving Fowler up from a Criminal History Category II. Overall, with this score and other offense-level adjustments, including a four-level enhancement for the number of firearms recovered, Fowler's advisory guidelines range was 117 to 131 months imprisonment: 57–71 months for Count 2, plus a statutorily-required 60 months for Count 3, to run consecutively.

3

Fowler's counsel objected initially only to certain offense-level issues in the PSR. But in a supplemental memorandum in support of a downward departure or variance, Fowler's counsel urged the district court to impose a lesser sentence. Counsel argued that the guidelines range of 57 to 71 months for Count 2 overstated the seriousness of Fowler's culpable conduct, believing that a range of 41 to 51 months was more appropriate. Counsel argued that instead of imposing a sentence in that range, Fowler should receive a five-year sentence for Count 2 to run *concurrently* with the mandatory minimum five-year sentence for Count 3.

In support of this request, counsel first argued that the court should depart downward to Criminal History Category II because Category III overstated the seriousness of Fowler's criminal history. He believed that the CDV offense "should not be counted due to [Fowler's] court-ordered attendance of an Addcare Program in lieu of incarceration, and due to the lack of information available regarding attorney representation and the facts of the offense." J.A. Vol. II at 28. Counsel explicitly stated, however, that "[t]he inadequacy of the information limit[ed] [Fowler's] ability to challenge the conviction's eligibility to be counted for Guideline purposes." *Id.*

Counsel made additional arguments to support a downward departure or variance. He argued that the base offense level of 24 for Count 2 overstated the defendant's culpability and the offense conduct, observing that (1) several of the recovered firearms were military firearms and family heirlooms that were likely inoperable; (2) Fowler had not obtained the firearms through an illegal gun market; (3) one firearm belonged to Fowler's wife; and (4) most, if not all, of the firearms were not easily accessible. Moreover,

4

in support of his request for concurrent sentences, counsel believed that imposing consecutive sentences would subject Fowler "to disproportionate punishment," as Fowler had not "engaged in separate and distinct criminal acts that gave rise to [both charges]" since both Count 2 and 3 had "possession" as an element and the only thing distinguishing them was Fowler's prior felony conviction. *Id.* at 31.

Finally, counsel argued that other circumstances existed to support a variance from the 57 to 71 months range for Count 2. These included: (1) Fowler suffers from a drug addiction and would benefit from rehabilitation; (2) Fowler had a troubled childhood and early adulthood; (3) Fowler had significant familial responsibilities due to his wife having crippling rheumatoid arthritis; (4) Fowler had strong support from family and friends; and (5) Fowler acknowledged the wrongfulness of his conduct.

## B.

At sentencing, the district court confirmed that it had reviewed the plea hearing, the PSR, and defense counsel's sentencing memoranda. Fowler's counsel withdrew all of his objections to the PSR and instead sought to rely solely on his variance motion. As a result, the district court adopted the factual findings set forth in the PSR, which included Fowler's conviction for CDV.

The government urged the district court to impose a within-Guidelines sentence. Fowler's counsel requested that the district court vary downward and impose a 60-month sentence. Counsel recited the main points from his earlier motion, adding an argument about Fowler's attempted cooperation with the government.

After listening to counsel's argument on Fowler's behalf, and after hearing from Fowler and his wife, the district court considered the variance motion. The court rejected Fowler's argument that he was a mere innocent collector of firearms. The court explained that it understood Fowler "liked collecting these firearms," but it observed that he also "had a bunch of ammunition." J.A. Vol. I at 18. The court additionally reminded Fowler that he had previously admitted, and the PSR reflected, that Fowler "had been selling for methamphetamine for about a year and that some of the firearms were obtained on trades for drugs." *Id.* at 20.

The district court confirmed that it had "considered all of the information presented [at the hearing] and the arguments of counsel." *Id.* at 21. It then considered the sentencing factors listed in 18 U.S.C. § 3553(a). The court observed that Fowler's criminal history began in 1988 and that he had been convicted of many different crimes, even if most did not earn criminal history points. The court found that Fowler "clearly" has "a drug problem." *Id.* at 23. Addressing the seriousness of the offense, the district court found that the government had "a legitimate and compelling interest in preventing this type of activity, including drug activity and possession of firearms and ammunition by convicted felons," as "there [was] an increased opportunity for violence and injury" when "there [was] a mix of drugs and firearms." *Id.* at 23–24. The court also found that Fowler's "conduct in this case and the serious nature of these offenses and his prior criminal history reflect[ed] some lack of respect for the law." *Id.* at 24. It further remarked that Fowler's "involvement with the criminal justice system ha[d] failed to deter him from committing serious offenses" and

6

expressed "hope[] that the sentence imposed" would "impact him in a positive way so as to deter future criminal conduct on his part." *Id.*

The district court confirmed that it had "carefully reviewed" counsel's motions for a downward departure or variance, but said that it was "going to respectfully deny those motions based on the totality of the circumstances and the application of the [§] 3553(a) factors . . . ." *Id.* at 24. Specifically, the court cited "the nature and circumstances of the offense, the history and characteristics of [Fowler], and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, promote adequate deterrence to future criminal conduct, and protect the public from further crimes of [Fowler]." *Id.* at 24–25.

The district court sentenced Fowler to 117 months' imprisonment: 57 months for Count 2 plus 60 months for Count 3. This was the lowest end of Fowler's advisory guidelines range. The court advised Fowler of his right to appeal and asked if there were "any substantive or procedural errors or omissions to be brought to the attention of the [c]ourt . . . ." *Id.* at 26–27. Fowler's counsel and the government had no objections. *Id.* at 27.

## C.

After the district court entered its judgment, Fowler's trial counsel failed to timely appeal. Thereafter, Fowler filed a 28 U.S.C. § 2255 motion arguing, among other points, that counsel rendered ineffective assistance by failing to file an appeal after Fowler directed him to do so. The district court then granted the motion, vacated its original judgment, and reinstated that judgment so that Fowler could file an appeal.

7

Fowler was provided appellate counsel, who subsequently filed an *Anders* brief, believing that there were no meritorious grounds to appeal Fowler's conviction and sentence. Counsel did suggest that the district court erred in refusing to grant Fowler's request for a downward departure or variance. Fowler then filed a pro se brief.[1] The government declined to file a responsive brief.

After conducting our review pursuant to *Anders*, we sought supplemental briefing to address whether the district court (1) plainly erred in assigning one criminal history point to Fowler's CDV offense; and (2) failed to adequately explain why it rejected Fowler's nonfrivolous arguments for a downward departure or variance in the sentence rendered.[2] After this court received the requested supplemental briefing, we ordered more detailed briefing asking whether the government had the burden of establishing that Fowler's sentence of participation in the Addcare domestic violence program counted as a "sentence previously imposed upon adjudication of guilt" under U.S.S.G. § 4A1.2(a)(1), and if so,

---

[1] Fowler filed two additional pro se supplemental briefs months after the deadline and without seeking leave from this court. We decline to consider them. *See United States v. Cheeseboro*, 757 F. App'x 224, 226 (4th Cir. 2018) (denying motion for leave to file supplemental pro se brief in an *Anders* case because defendant filed it after deadline and did not attach proposed brief). Even if we were to formally consider these untimely briefs, we believe the arguments raised to be without merit.

[2] After this court ordered its first round of supplemental briefing from appellate counsel, Fowler again filed a pro se brief without seeking leave from this court. Since his appellate counsel filed a supplemental merits brief as we directed, we decline to consider the arguments raised in Fowler's pro se brief. *United States v. Cohen*, 888 F.3d 667, 682 (4th Cir. 2018) ("[A]n appellant who is represented by counsel has no right to file pro se briefs or raise additional substantive issues in an appeal."). Even if we were to formally consider these additional arguments, *see id.* at 682, we believe them to be without merit.

whether the government met that burden. We also granted Fowler's motion to relieve his appellate counsel but denied a pending motion to proceed pro se. New counsel was appointed for the second round of supplemental briefing and oral argument.

## II.

We find no reversible error in this case. As a general proposition, this court reviews a criminal sentence for reasonableness "under a deferential abuse-of-discretion standard." *United States v. Williams*, 5 F.4th 500, 505 (4th Cir. 2021). "Reasonableness review has procedural and substantive components." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). Procedural reasonableness requires us to "ensure that the district court committed no significant procedural error," which includes "improperly calculating . . . the Guidelines range." *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012) (internal quotation marks omitted). Any claim of error that was not pursued and preserved in the district court is reviewed only for plain error. *United States v. Olano*, 507 U.S. 725, 731–37 (1993).

## III.

We begin with Fowler's CDV offense. Fowler's PSR assessed one criminal history point for his CDV conviction and sentence of participation in the Addcare 26-Week Program, which resulted in an overall Criminal History Category III. Fowler argues that the district court erred in assigning this point, as the government did not prove that Fowler's sentence was "previously imposed upon adjudication of guilt, whether by guilty plea, trial or plea of *nolo contendere*." U.S.S.G. § 4A1.2(a)(1). Fowler did not specifically object to the assignment of this point at his sentencing. He even went as far as to withdraw *all* factual

9

objections to the PSR, J.A. Vol. I at 7–8, and thus plain error review controls. *See United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014); Order, *United States v. Fowler*, No. 19-4178, ECF No. 39 (4th Cir. Feb. 4, 2022) (ordering supplemental briefing under plain error review).

Therefore, Fowler must show that: (1) assignment of this additional criminal history point was error; (2) the error was plain; and (3) the error affected his substantial rights, which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, --- U.S. ----, 138 S. Ct. 1897, 1904–05 (2018) (internal quotation marks omitted). If Fowler carries this burden, we "may grant relief if" we conclude "that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer v. United States*, --- U.S. ----, 141 S. Ct. 2090, 2096–97 (2021) (internal quotation marks omitted). As the Supreme Court has admonished, "[s]atisfying all four prongs of the plain-error test is difficult." *Id.* at 2097 (internal quotation marks omitted).

### A.

The Sentencing Guidelines' criminal history provisions assign a specified number of criminal history points for each of a defendant's prior sentences. A "prior sentence of imprisonment" exceeding thirteen months earns three points, U.S.S.G. § 4A1.1(a), whereas a "prior sentence of imprisonment" between 60 days and thirteen months gets two points, *id.*, § 4A1.1(b). The guidelines also assign one criminal history point for any "prior sentence" of less than 60 days. *Id.*, § 4A1.1(c). The term "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or

plea of *nolo contendere*, for conduct not part of the instant offense." *Id.*, § 4A1.2(a)(1); *see also United States v. Martinez-Melgar*, 591 F.3d 733, 737 (4th Cir. 2010).

The Sentencing Guidelines provide also that only some diversionary dispositions may be counted as a "prior sentence" under Section 4A1.1(c). "Diversion from the judicial process without a finding of guilt" does not count as a prior sentence. U.S.S.G. § 4A1.2(f). But a "diversionary disposition resulting from a finding or admission of guilt, or a plea of *nolo* contendere, in a judicial proceeding is counted as a sentence under § 4A1.2(c) even if a conviction is not formally entered[.]" *Id.* The commentary to § 4A1.2 spells this out more explicitly: a diversionary disposition qualifies as a "prior sentence" only if it results from "a judicial determination of guilt or an admission of guilt in open court." *Id.*, § 4A1.2, cmt. 9. "[A]dding a criminal history point where there has been a prior adjudication of guilt reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." *United States v. Miller*, 992 F.3d 322, 326 (4th Cir. 2021) (internal quotation marks omitted).

## B.

Fowler argues that the district court improperly relied on the PSR in assigning one criminal history point because the government failed to prove that his CDV conviction was "previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*." U.S.S.G. § 4A1.2(a)(1). It is true that limited information existed in the PSR about the CDV offense, and that the PSR stated the "facts of the [CDV] offense are unknown due to a ticket being issued." J.A. Vol. II at 10. We need not go as far as Fowler suggests, however.

11

As this court has held in the sentencing context, the "defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). Without such a showing, "the government meets its burden of proving those facts by a preponderance of the evidence, and the district court is free to adopt the findings of the presentence report without more specific inquiry or explanation." *United States v. Revels*, 455 F.3d 448, 451 n.2 (4th Cir. 2006) (internal quotation marks omitted).

Fowler made no such showing; instead, he withdrew all objections about the PSR to rely on his arguments in favor of a downward departure or variance. Indeed, at oral argument, Fowler's counsel conceded that trial counsel affirmatively *waived* any objection to the PSR. Oral Arg. at 29:11; *see also Robinson*, 744 F.3d at 298–99 ("[W]hen a claim is waived, it is not reviewable on appeal, even for plain error."). Regardless of how this admission is characterized, the outcome is the same. The district court correctly accepted the "undisputed portion of the presentence report as a finding of fact," Fed. R. Crim. P. 32(i)(3)(A), which included the fact of Fowler's conviction for CDV.

Fowler "stands in the best position to offer a first-hand account of the details of his own past legal proceedings[.]" *United States v. Collins*, 415 F.3d 304, 316 (4th Cir. 2005) (internal quotation marks omitted). This includes whether his conviction for CDV resulted from a finding or admission of guilt or a *nolo contendere* plea. This requirement reflects a general principle of adversarial litigation: "If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve

12

the issue." *Puckett v. United States*, 556 U.S. 129, 134 (2009). Since Fowler failed to object to the PSR's inclusion of his CDV conviction, we find no error by the district court in adopting it.

C.

Even assuming arguendo that it was somehow error for the district court to adopt the PSR without more evidence showing Fowler's CDV offense resulted from an admission of guilt, that error is anything but plain. On appeal, the government provided this court with a "printout from the Greenville County Public Index, a web site of court records maintained by the South Carolina Judicial Branch, of information regarding Fowler's CDV case." Government Suppl. Br. I at 12, n.5. This printout lists "Guilty Bench Trial" as the disposition of the offense, and "Addcare 26 week Batterer's Intervention Program" as the sentence. *Id.*, Add. 1. This information demonstrates that Fowler's "prior sentence" for his CDV conviction was accompanied by an adjudication of guilt.

While appellate courts are normally bound to information contained within the record, "[w]e may take judicial notice of facts outside the record where the fact may not be reasonably disputed and is 'relevant and critical to the matter on appeal.'" *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018) (quoting *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)). Indeed, we have previously found that the "most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Colonial Penn Ins. Co,*, 887 F.2d at 1239 (internal quotation marks omitted). But a "judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable

of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* (internal quotation marks omitted) (alteration in original).

Fowler's counsel argued that this court should ignore the government's printout because (1) it is not a *Shepard* document[3] and (2) it is unreliable. We disagree. We have held that "*Shepard* establishes which documents we may review when applying the modified categorical approach, but it does not limit courts in deciding whether a conviction actually exists." *Townsend*, 886 F.3d at 443. In *United States v. Martinez-Melgar*, this court rejected the same argument counsel is making in this case, noting that "sentencing courts routinely rely on . . . printouts of computerized records" to determine the fact of conviction and make criminal-history calculations. 591 F.3d at 738–39.

Counsel's belief that this document is not "trustworthy" also fails to withstand scrutiny. Counsel argues that "[t]here has not been a finding that the computer document is trustworthy" and that the printout "is simply a history kept by a Clerk of Court's office that may or may not have back up files . . . ." Appellant Suppl. Br. II at 5. Such an argument contravenes our decision in *United States v. Walker*, 922 F.3d 239 (4th Cir. 2019). In *Walker*, we held that "where the defendant has not pointed to any evidence casting doubt" on a government report "being used to support an enhancement, the report may be trusted."

---

[3]In *Shepard v. United States*, 544 U.S. 13, 20–21 (2005), the Supreme Court held that sentencing courts may consult only a limited set of sources when determining the nature of a prior conviction for the purpose of applying an Armed Career Criminal Act enhancement. These include: "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record[.]" *Id,* at 26.

922 F.3d at 253 (internal quotation marks omitted). Counsel points to no credible evidence suggesting the Greenville County Public Index printout is untrustworthy, but instead makes unsupported attacks against its reliability.

In sum, we believe that the district court did not err in assessing Fowler one criminal history point without more specific evidence regarding the nature of his CDV conviction. Further, Fowler has not born the heavy burden of satisfying the plain error criteria, as he cannot prove "that, but for the error, the outcome of the proceeding would be different." *Rosales-Mireles*, 138 S. Ct. at 1904–05 (internal quotation marks omitted). We thus affirm the district court on this ground.

## IV.

### A.

We now turn to the question of whether the district court adequately explained its rejection of Fowler's non-frivolous arguments for a more lenient sentence. We note that Fowler preserved this objection through his supplemental variance motion and his arguments at sentencing. *See United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010) (explaining that arguing "for a sentence different than the one ultimately imposed . . . sufficiently alerts the district court . . . , and thus preserves [the] claim"). We therefore review Fowler's sentence for procedural reasonableness under a general abuse-of-discretion standard. *United States v. Martinez-Varela*, 531 F.3d 298, 299 (4th Cir. 2008). We need not reverse the district court, however, if we find any error harmless. *Lynn*, 592 F.3d at 579.

15

For a sentence to be procedurally reasonable, a district court must begin its sentencing proceeding by "correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Using this range as a jumping off point, the "court must thereafter give the parties the opportunity to argue for whatever sentence they deem appropriate and consider those arguments in light of all of the factors stated in 18 U.S.C. § 3553(a)." *United States v. Hernandez*, 603 F.3d 267, 270 (4th Cir. 2010). The court must then conduct "an individualized assessment based on the facts before the court, and . . . explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (internal quotation marks omitted).

As part of this individualized assessment, the "district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). Importantly, "in a routine case, where the district court imposes a within-Guidelines sentence, the explanation need not be elaborate or lengthy." *United States v. Arbaugh*, 951 F.3d 167, 174–75 (4th Cir. 2020) (internal quotation marks omitted). When a district court has fully addressed the defendant's "central thesis" during sentencing, it need not "address separately each supporting data point marshalled" for a downward variance. *United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020).

We find that the district court adequately addressed Fowler's non-frivolous arguments for a downward departure or variance.

B.

We have reviewed the sentencing transcript and conclude that the district court meaningfully considered Fowler's argument for a downward departure or variance and denied it based on several relevant 18 U.S.C. § 3553(a) factors. These included: Fowler's history, characteristics and the nature and circumstances of his offense, the need to promote respect for the law and provide just punishment, the need for the sentence to reflect the seriousness of the offense as "[w]henever there is a mix of drugs and firearms, . . . there is an increased opportunity for violence and injury," J.A. Vol. I at 24; and the need to afford adequate deterrence in light of Fowler's litany of convictions. The court confirmed that it had reviewed the plea hearing, the PSR, and counsel's sentencing memorandum, including the handwritten letters attached to the memorandum from Fowler's family and friends. We stress the vigilant analysis that the district court undertook, as it undermines any argument that the court failed to provide an individualized assessment when determining Fowler's sentence. *See Arbaugh*, 951 F.3d at 174 (the individualized assessment requirement "focuses on the whole of a defendant's argument and does not require the court to address every argument a defendant makes").

Fowler's claim that the district court ignored his non-frivolous reasons for a downward departure or variance in sentencing comes in three parts. The first revolves around criminal history, the seriousness of which counsel believes was overstated. The second involves Fowler's culpability in the offense conduct. Mainly, counsel sought to downplay the sheer number of firearms recovered from Fowler's residence, arguing that Fowler was merely a collector of firearms and had not used them in furtherance of drug

17

trafficking activity. The final category of variance arguments involves Fowler's personal circumstances. Counsel highlighted Fowler's significant familial responsibilities, his ongoing drug problem, his troubled childhood and early adulthood, and the remorse he felt about his criminal conduct.

The district court adequately addressed the "central thes[e]s" of Fowler's variance arguments. *Nance*, 957 F.3d at 214. We begin with the criminal history argument. Whereas Fowler tried to discount his criminal history score, the court rightly consulted the laundry list of his unscored convictions when going through the 18 U.S.C. § 3553(a) factors. As the district court noted, Fowler's criminal record was extensive, dating back to 1988, and encompassing, *inter alia*, convictions for second-degree burglary, petit larceny, assault and battery, breach of trust, and possession of drug paraphernalia. The trial court concluded that Fowler's "involvement with the criminal justice system has failed to deter him from committing serious offenses." J.A. Vol. I at 24.

The district court also engaged with and rejected the argument that Fowler made with respect to his offense conduct, mainly that he was somehow not culpable for the number of guns in his residence. After Fowler's counsel presented his argument for a downward departure or variance in sentencing, and the court heard from both Fowler and his wife, the court began by noting that Fowler was not just an innocent collector of firearms. Rather, he had a "bunch of ammunition" and that some "firearms were obtained on trades for drugs." J.A. Vol. I at 18, 20. The volatile "mix of drugs and firearms" underscored for the court the seriousness of Fowler's offense conduct. *Id.* at 24. The court thus rejected Fowler's key argument that his offense conduct warranted a downward

18

departure or variance in sentencing. *See United States v. Blue*, 877 F.3d 513, 521 (4th Cir. 2017) ("[R]eviewing courts may . . . infer that a sentencing court gave specific attention to a defendant's argument for a downward departure if the sentencing court engages counsel in a discussion about that argument.").

Finally, as to the arguments regarding Fowler's personal circumstances, the court showed that it had considered his drug addiction issues in fashioning its sentence. The court observed that Fowler "clearly" has "a drug problem." J.A. Vol. I at 23. As Fowler requested, the court recommended that he be enrolled in "any drug treatment programs available to him in prison," *id.* at 26, and the court made substance abuse testing a condition for Fowler's supervised release, *id. See also Nance*, 957 F.3d at 213 (inferring consideration of personal characteristics from a sentence which included drug treatment when the defendant was a drug addict). The court also heard and responded to Fowler's allocution, in which the defendant highlighted the difficult circumstances of his childhood and expressed his remorse. J.A. Vol. I at 17–18. In sum, "[t]his is not a case where the district court passively heard the parties' arguments and then seemed to ignore them." *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). The sentencing was fairly conducted, and we take no exception to it.

## V.

We have reviewed the record in its entirety, and we have found no basis for disturbing the trial court's rulings. For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

19