**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4181

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RICKY FITZGERALD ARTIS,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:18-cr-00422-D-1)

Argued:  May 7, 2025                                            Decided:  August 21, 2025

Before WILKINSON and KING, Circuit Judges, and Matthew J. MADDOX, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion.  Judge King wrote the opinion, in which Judge Wilkinson and Judge Maddox joined.

**ARGUED:**  Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, John L. Gibbons, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Defendant Ricky Fitzgerald Artis appeals from his prison sentence of 204 months, plus three years of supervised release, that was imposed in February 2023 in the Eastern District of North Carolina. His offense conduct stems from a botched armed robbery attempt in a Fayetteville hotel in 2018, when Artis shot his intended victim twice with a handgun. In this appeal — which arises from his resentencing proceedings — Artis challenges procedural and substantive aspects of his sentence. More specifically, Artis raises four contentions: (1) the district court procedurally erred by failing to provide him with notice of its intent to depart above the Guidelines range; (2) the court abused its discretion by imposing a sentence 53 months above the top of the Guidelines range; (3) the court's imposition of broad warrantless search conditions creates a presumption of judicial vindictiveness; and (4) the warrantless search conditions are procedurally and substantively unreasonable. As explained herein, we reject each of his contentions and affirm.

I.

A.

On October 10, 2018, Artis and his partner-in-crime, a man named Currie, were indicted by a grand jury in the Eastern District of North Carolina for attempted Hobbs Act robbery, in violation of 18 U.S.C § 1951 (Count One),[1] and using a firearm in connection

---

[1] Pursuant to 18 U.S.C. § 1951, commonly known as the Hobbs Act, "[w]hoever . . . obstructs, delays, or affects commerce . . . by robbery . . . or attempts . . . to do so, or commits . . . physical violence to any person . . . in furtherance of (Continued)

3

with a "crime of violence," under 18 U.S.C. § 924(c) (Count Two). Artis alone was also indicted for being a felon in possession of a firearm (Count Three). The charges stemmed from the attempted robbery of a drug dealer named McNeill in a Fayetteville hotel room a few months prior. During that incident, Artis entered the hotel room, shouted to McNeill to "give it up," and then promptly shot McNeill with a handgun. McNeill's brother, who was also in the hotel room, tried to disarm Artis, but Artis shot McNeill again before the gun jammed. Artis and Currie then fled the crime scene. McNeill survived his wounds, but he is partially paralyzed.

1.

On April 15, 2019, Artis pleaded guilty to Counts One and Two, pursuant to a plea agreement. Count Three was then dismissed, and Artis's right to appeal a sentence exceeding the applicable Guidelines range was therein preserved. The Probation Officer recommended a Guidelines range on Count One of 77 to 96 months, and Count Two provided for a mandatory 120-month consecutive sentence. The presentence report (the "PSR") for Artis identified multiple factors that could warrant an upward departure or variance, and it recognized that the maximum statutory penalty faced by Artis on the Count One Hobbs Act offense was 20 years in prison. Three potential bases for an upward departure or variance identified in the PSR included an inadequacy in Artis's criminal

---

a plan to do anything in violation of this section shall be . . . imprisoned not more than twenty years."

4

history assessment, a physical injury caused by Artis, and Artis's intent to murder his victim. *See* U.S.S.G. §§ 4A1.3; 5K2.2; and 2B3.1, application note 5.

On October 18, 2019, the district court sentenced Artis to an aggregate sentence of 216 months, that is, 96 months on the Count One Hobbs Act conviction, plus 120 months consecutive on Count Two. The sentence also imposed 5 years of supervised release, which included, inter alia, a condition that authorized warrantless searches of Artis's "person and premises, including any vehicle." *See* J.A. 84.[2]

### 2.

Artis timely appealed his 2019 sentence and contended, inter alia, that his Hobbs Act attempted robbery conviction on Count One did not categorically qualify as a "crime of violence" for purposes of his § 924(c) conviction on Count Two. On May 1, 2020, his appeal was placed in abeyance by our Court pending resolution of other relevant appeals, including one from this Circuit called *United States v. Taylor*, which concerned the very same "crime of violence" issue underlying Artis's Count Two sentence. *See United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020).

In June 2022, the Supreme Court affirmed our Circuit's 2020 decision in *Taylor*, where we ruled that an attempted Hobbs Act robbery is not a "crime of violence" for purposes of § 924(c). *See United States v. Taylor*, 596 U.S. 845 (2022). On August 24, 2022, based on the Supreme Court's *Taylor* decision, we vacated Count Two's § 924(c)

---

[2] Our citations herein to "J.A. __" refer to the Joint Appendix filed by the parties.

convictions and sentences of Artis and his partner-in-crime, and then remanded their sentencing proceedings to the Eastern District of North Carolina.

On remand to the district court, the Probation Officer submitted what was designated as a "Resentencing Memorandum," to the presiding district judge.[3] The Resentencing Memorandum was filed as a "modification" to Artis's PSR on January 13, 2023, and the Memorandum recites that the parties had received an earlier notice of its contents on January 4, 2023. The Resentencing Memorandum thus supplemented the PSR and recalculated Artis's Guidelines range for Count One.

The revised Guidelines calculation included two of the enhancements applied in the 2019 calculation: one for causing permanent bodily injury to the victim, and another for stealing (or intending to steal) drugs during the Count One Hobbs Act offense. The revised Guidelines calculation also included an enhancement for discharging a firearm during that offense. The Resentencing Memorandum emphasized that this enhancement was appropriate in light of Artis's 18 U.S.C. § 924(c) conviction having been vacated. The revised calculation resulted in a recommended advisory Guidelines range of 121 to 151 months, plus three years of supervised release. The Memorandum also recommended revised supervised release conditions, including a condition that authorized warrantless searches of Artis's "person, and any property, house, residence, vehicle, papers, computer,

---

[3] The Probation Officer who prepared the PSR in 2019 also prepared the Resentencing Memorandum in 2023.

other electronic communication or data storage devices or media, and effects upon reasonable suspicion." *See* J.A. 155.

B.

On February 27, 2023, the district court in Eastern North Carolina resentenced Artis on his Count One Hobbs Act conviction. Key aspects of Artis's resentencing are central to this appeal, so we will summarize those proceedings in some detail.

1.

The resentencing hearing began with the court explaining the Guidelines calculations of the PSR for the Count One Hobbs Act offense, detailing each enhancement and calculation made in reaching the total offense level and criminal history category that resulted in the advisory Guidelines range of 121 to 151 months. Of some importance, the court explicitly paused early in the hearing, and he asked whether Artis objected to the new advisory Guidelines range, and he did not do so.

The court explained to Artis that paragraph 107 of the PSR "included the basis for an upward departure under [U.S.S.G.] § 4A1.3, inadequacy of criminal history; § 5K2.2, physical injury; and § 2B3.1, application note 5, if the Defendant intended to murder the victim." *See* J.A. 94. The court also announced that "for purposes of Rule 32(h) there is notice of [those Guidelines provisions] as a possible basis for an upward departure and, obviously, utterly horrific conduct on the part of this Defendant and I am considering an upward departure." *Id.* at 94-95.

7

After explaining its intention to possibly upwardly depart, the district court heard directly from Artis.[4]   Next, the court heard from Artis's counsel, Mr. Ross.   After emphasizing Artis's lack of infractions in prison custody and his efforts to better himself, Ross requested that the court consider a midrange Guidelines sentence of 136 months.

Defense lawyer Ross stated that "[t]his court originally sentenced [Artis] to 96 months and . . . I understand the Guidelines have changed as a result of one of the charges being dismissed." *See* J.A. 96.  Ross reiterated much of what Artis had said to the court regarding his time as an incarcerated prisoner, and he emphasized that Artis had no infractions in prison and was trying to better himself.  Ross referenced a list of classes that Artis had taken in prison and said Artis planned to take more classes and continue his journey of change.  He also spoke about Artis's family, particularly his role as a parent, and Artis's desire to stop the cycle of generational incarceration.  Ross acknowledged the fact that the court was considering an upward departure, and asked the court not to do so "because of what he's done this far and because this is only part of his journey." *Id.* at 98.  Ross further urged the court to consider that "what [Artis] has done while he's in the Bureau of Prisons is a step in the right direction." *Id.*

---

[4] Artis apologized to the court and demonstrated some remorse for shooting his victim.  He explained that he had been trying to better himself and that he intended to better others and help the younger generation.  He showed concern for the frequency of school shootings and his awareness of a need for gun control.  He also explained that, since his previous sentencing, he had been participating in prison programs, "staying out of trouble," and working in the prison kitchen. *See* J.A. 96.  He then asked the court to consider his desire to change and to help others.

The district court then heard from the Assistant United States Attorney. The prosecution highlighted Artis's criminal history and emphasized the seriousness of his underlying offense, stating this was not a case where a defendant "was careless and was found near a gun," but that Artis had "committed a robbery with a firearm and very nearly killed someone." *See* J.A. 99. The AUSA reminded the court that the victim was paralyzed by the gunshot wounds he had sustained from Artis, and the prosecution requested a sentence at the top of the Guidelines range, that is, 151 months.

2.

After hearing from Artis and the lawyers, the district court stated its view that the government's "recommendation ignores and discounts nearly to zero the horrific nature of the criminal activity of [Artis] and his appalling criminal history." *See* J.A. 100. The court observed that Artis "didn't kill this man because the gun jammed," and that although he would take Artis's progress into account, the relevant offense conduct was "absolutely horrific" and a "pattern of life" for Artis. *Id.*[5]

The district court then addressed Artis directly, and it recognized "its obligation to impose a sentence sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553(a). *See* J.A. 100. The court emphasized that it had considered the arguments that lawyer Ross had made in favor of Artis, Artis's personal statement to the court, and the position of the government. It also stated that it had considered the applicable

---

[5] Artis had stated to the court during his 2019 sentencing that he was "[g]lad the gun was jammed after two shots," because he had tried to shoot his victim additional times. *See* J.A. 66.

9

Guidelines range, as well as the § 3553(a) factors. The court observed that "[t]he statute lists numerous other factors," and "I have considered all those factors although I won't mention each one individually." *Id.* at 101.

The district court then proceeded to discuss the nature and circumstances of the offense of conviction, detailing the armed robbery during which Artis shot his victim twice and fled the Fayetteville hotel crime scene. The court related its view that the victim was targeted for "drug proceeds and/or drugs." *See* J.A. 102.[6] The court emphasized that the victim had been treated for life threatening injuries and was paralyzed from the waist down. And the court related that Artis had grabbed a bag of crack cocaine off a table before fleeing the scene — but also acknowledged that Artis disputes that fact and objected to it. The court pointed out that, about a week after the offense conduct, Artis was arrested at his residence and admitted to his participation in the hotel robbery.

The sentencing court then discussed Artis's admissions and recollections of the relevant events, as detailed in the PSR. The court emphasized that Artis had admitted shooting the victim for not following his commands, and that Artis initially believed he had actually killed his victim. Wrapping up its discussion of the nature and circumstances of the events, the court again emphasized that Artis's conduct was "[a]bsolutely horrifying." *See* J.A. 104.

---

[6] Artis had then asserted that the robbery was his partner-in-crime's idea, and that the primary target was the victim's drug money. Artis had acknowledged that they knew the victim to be a drug dealer, and although stealing money was their main objective, they considered stealing drugs as an "extra," if the opportunity presented itself.

Next, the presiding judge walked through the history and characteristics of Artis, including, inter alia, his "extensive criminal history that began at age 18." *See* J.A. 104. The court reviewed more than two dozen criminal convictions of Artis — who was 52 years of age at resentencing — including multiple instances of probation being revoked. The court recognized that, "[s]ince [Artis] was originally sentenced, he has not incurred any infractions," and that he had participated in education courses. *Id.* at 106. The court acknowledged that it would take into account Artis's good behavior and participation in such education courses "as a part of fashioning a sentence sufficient but not greater than necessary in this case." *Id.*

The court explained also that it would take Artis's allocution in open court into account, where Artis had related his plans while incarcerated and for life after prison. The court also recognized the hardships Artis had experienced during his incarceration, including contracting COVID and the death of a parent, along with his efforts to remain involved in his children's lives, plus lawyer Ross's request for a 136-month sentence. In rejecting that specific request, the court explained, "[t]hat [such a sentence] is woefully inadequate in this case." *See* J.A. 106.

The district court then advised Artis that, "[u]nder Rule 32(h), the [PSR] contained a notice of possible upward departure, [and] grounds for an upward departure." J.A. 106-07. It also specified that, under U.S.S.G. § 5K2.2, entitled "Physical Injury," the Guidelines provide:

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove

11

permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) . . . did not knowingly create the risk of harm, a less substantial departure would be indicated.

*See* J.A. 107.

The court further explained that U.S.S.G. § 2B3.1, application note 5, specifies that "[i]f the defendant intended to murder the victim, an upward departure may be warranted." *Id*. After detailing those Guidelines provisions, the court found that they applied to "this defendant in this case." *Id.* at 107. The court thus emphasized its view that, "the government's recommendation is woefully inadequate," in that, Artis "intended to murder the victim." *Id*. The court stated that "[t]he victim did suffer a major permanent disability," and that Artis had "intentionally inflicted that injury." *Id*. The court recognized the severity of the victim's injuries, reciting that he "will be in a wheelchair for the rest of his life." *Id*. The court then concluded that "[t]hankfully, [the victim] did not die, but it was not for a lack of trying by [Artis]." *Id*.

The sentencing court continued with its explanation, reiterating that it had "taken into account the arguments associated with the journey that [Artis] is on," but that the court "will not ignore the criminal conduct that" brought them to the resentencing proceedings. *See* J.A. 107-08. The court summarized the details that supported its upward departure by reciting:

In cold blood he shot this man as part of an attempted robbery for money or drugs or both. He began firing because the man wasn't listening to commands. The only reason he stopped is because his gun jammed. Not because he is a good person. Not because he thought better of it. Not because

he was concerned about gun violence.  But because the gun jammed.  That's why he stopped shooting.  His conduct is appalling.  His conduct deserves serious punishment.  The conduct warrants an upward departure under [U.S.G.G. §] 5K2.2 and under [§] 2B3.1 application note 5.

*See* J.A. 108.

In concluding, the sentencing judge observed that "[h]aving taken into account the need to promote respect for the law," and "the need to incapacitate this defendant — he has made some progress." *See* J.A. 108.  The judge acknowledged that Artis did not have any infractions in custody, and that he was taking education classes, but that "his record shows me that he has failed often when he is out [of prison] and even under supervision." *Id*.  The court then emphasized the need for general deterrence of such crimes, reciting that "Ricky Fitzgerald Artis knowingly and willfully participated in this criminal conduct," and "acted in callous disregard for the victim he shot out of greed, nothing more." *Id*.

3.

After "having fully considered the entire record" and "all the 3553(a) factors," the district court sentenced Artis to 204 months in prison — 12 months less than his 2019 sentence — plus three years of supervised release.  J.A. 108-09.  That sentence, the court explained, "represents an upward departure under [U.S.S.G. §§] 5K2.2, and 2B3.1 application note 5." *Id.* at 109.[7]

---

[7] In resentencing Artis, the court also explained that, even if the recalculated Guidelines range was incorrect, or if the upward departure was improper, the court would yet impose the same sentence as an upward variance, based on the statutory sentencing factors in 18 U.S.C. § 3553(a).

13

In imposing Artis's mandatory and standard conditions of supervised release, the sentencing court "carefully consider[ed] the provisions of 3583(b), and the factors outlined in 3553(a)." J.A. 109. And in imposing special conditions of supervised release, the court based them on "statutory requirements," the "nature and circumstances of the offense," Artis's "substance abuse history," his "need for mental health treatment," his "need to support dependents," and "restitution [he] owed." *Id.* at 109-10. And the court emphasized that the conditions were imposed "to adequately supervise him." *Id.* at 110. The court then imposed multiple special conditions of supervised release, including warrantless searches of Artis's "person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects upon reasonable suspicion." *Id.* at 110, 119. Of importance, Artis did not object to any of the supervised release conditions.

With the factual background having been spelled out herein, we turn to the issues presented by Artis on appeal. We possess final order jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Of the appellate contentions that Artis seeks to pursue, only one was properly preserved by being raised in the district court proceedings. That is, his challenge regarding his 204-month prison departure sentence that exceeds the applicable Guidelines range by 53 months was raised with the sentencing court. His lawyer had requested a sentence of 136 months, within the Guidelines range of 121 to 151 months. His appellate contention

14

concerning the 53-month departure is subject to our review for abuse of discretion. *See United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017). On the other hand, his remaining appellate contentions were not preserved in the district court. As a result, we review each of them for plain error only. *See United States v. Elbaz*, 52 F.4th 593, 611-12 (4th Cir. 2022). Those issues are:

- That the court failed to provide Artis with reasonable notice of its intention to depart upward — above the Guidelines range;

- That the broad search conditions imposed on Artis in connection with his three years of supervised release gives rise to a presumption of judicial vindictiveness; and

- That those broad search conditions are procedurally and substantially unreasonable.

We will first address Artis's sole preserved contention, which we review for abuse of discretion. We will then turn to his remaining contentions, which are reviewed for plain error.

## A.

As mentioned above, we first resolve whether the sentencing court abused its discretion by imposing on Artis a 204-month sentence, 53 months above the Guidelines range. We generally review a "criminal sentence for reasonableness under a deferential abuse-of-discretion standard." *United States v. Fowler*, 58 F.4th 142, 150 (4th Cir. 2023) (internal quotation marks omitted). A "[r]easonableness review [of a sentence] has

procedural and substantive components." *Id.* (internal quotation marks omitted).   We

consider:

> whether the district court committed . . . significant procedural error, such
> as . . . improperly calculating[] the Guidelines range, . . . failing to consider
> the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly
> erroneous facts, or failing to adequately explain the chosen sentence.

*See United States v. Lester*, 985 F.3d 377, 384 (4th Cir. 2021) (alterations and internal

quotation marks omitted).

As we have also recognized, however, "[a] district court is required to provide an

individualized assessment based on the facts before the court, and to explain adequately

the sentence imposed to allow for meaningful appellate review and to promote the

perception of fair sentencing." *See United States v. Lewis*, 958 F.3d 240, 243 (4th Cir.

2020) (internal quotation marks omitted).  If we are satisfied that a challenged sentence is

procedurally reasonable, we review its substantive reasonableness by "examin[ing] the

totality of the circumstances to see whether the sentencing court abused its discretion in

concluding that the sentence it chose satisfied the standards set forth in § 3553(a)."  *See*

*United States v. Arbaugh*, 951 F.3d 167, 176 (4th Cir. 2020) (internal quotation marks

omitted).

In this situation, Artis challenges the adequacy of the sentencing court's explanation

of its above-Guidelines sentence, contending that the court did not sufficiently justify the

extent thereof.  When a sentence is outside the advisory Guidelines range, a reviewing

court is obliged to "consider whether the sentencing court acted reasonably both with

respect to its decision to impose such a sentence and with respect to the extent of the

divergence from the sentencing range." *See United States v. Nance*, 957 F.3d 204, 215 (4th Cir. 2020) (internal quotation marks omitted). A significant deviation from the sentencing range "should be supported by a more significant justification than a minor one." *See United States v. Provance*, 944 F.3d 213, 217 (4th Cir. 2019). The larger the divergence, "the more compelling the reasons for the divergence must be." *Id*. at 220. The reviewing court, however, "must give due deference to the district court's decision that the 18 U.S.C. § 3553(a) factors, on a whole, justify the extent" of the divergence. *Id.* at 217.

In these circumstances, the district court emphasized that Artis's Hobbs Act conviction on Count One stemmed from his attempted robbery of a drug dealer in the Fayetteville hotel room, during which Artis shot the victim twice. The court recognized that Artis had fled the crime scene when his gun jammed. And the court considered Artis's frank admission that he would have shot the victim additional times had his pistol not jammed. The court emphasized the severity of the victim's injuries, including being permanently paralyzed from the waist down. Finally, the court highlighted Artis's extensive criminal history, plus his poor performance on supervised release. The court summarized its reasoning behind the upward departure sentence as follows:

> As discussed, the victim in this case, [Artis] shot him multiple times at close range resulting in permanent paralysis to his lower body. He thought it killed him. Thankfully the victim survived. [Artis] stopped shooting because his gun jammed. The requested sentence of the government is woefully inadequate to account for the 3553(a) factors. The requested sentence of the defense is woefully inadequate to account for the 3553(a) factors, and the ones that I've discussed.

*See* J.A. 109.

17

In view of the district court's detailed explanation, there was no procedural error in its decision to depart upward in its sentence. And in the totality of the circumstances, that sentence was substantively reasonable in every respect. We therefore discern no abuse of discretion in the sentencing of Artis.

## B.

Again, because Artis failed to object in the district court, his other three contentions of error can be reviewed for plain error only. *See United States v. Elbaz*, 52 F.4th 593, 611-12 (4th Cir. 2022). To prevail on any of those issues under the plain error standard, Artis is obliged to establish "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See United States v. Comer*, 5 F.4th 535, 548 (4th Cir. 2021) (internal quotation marks omitted). And for an error to be plain, it must be "clear" or "obvious." *See United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996) (citing *United States v. Olano*, 507 U.S. at 734 (1993)).

None of Artis's other appellate contentions come close to satisfying that demanding standard. Having carefully assessed the record and the parties' briefs, and with the benefit of oral argument, we are satisfied that the district court did not err with respect to any of the unpreserved issues. As a result, they each fail on the first prong of our plain error review.

III.

Pursuant to the foregoing, we reject each of Artis's contentions of error and affirm the judgment of the district court.

*AFFRIMED*